IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| FREDERICK HINES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Case No. 1:07-cv-01664** |
| | ) | |
| THE GEO GROUP, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANT GEO GROUP'S MOTION TO DISMISS AND ALTERNATIVE MOTION TO TRANSFER

Defendant GEO Group, Inc. ("GEO"), by and through counsel, moves the court to dismiss this action pursuant to Rule 12(b) of the Federal Rules of Civil Procedure for lack of personal jurisdiction and failure to state a claim upon which relief may be granted. In the alternative, if the Court decides that this action should not be dismissed, Defendants move the Court to transfer this action to the United States District Court for the Eastern District of North Carolina pursuant to 28 U.S.C. §§ 1404 and 1406.

This the 29th day of October, 2007.

Respectfully submitted,


__/s/ Deborah J. Israel_____
Deborah J. Israel (DC Bar No. 430841)
Womble Carlyle Sandridge & Rice, PLLC
1401 Eye Street, NW, 7th Floor
Washington, DC 20005
(202) 857-4466
*Counsel for Defendant GEO Group, Inc.*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FREDERICK HINES,            )
                                  )
            Plaintiff,       )
                                  )
v.                             )     <u>**Case No. 1:07-cv-01664**</u>
                                  )
THE GEO GROUP, INC., *et al.*,   )
                                  )
            Defendants.   )
                                  )

## <u>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT GEO GROUP'S MOTION TO DISMISS AND ALTERNATIVE MOTION TO TRANSFER</u>

Plaintiff Frederick Hines ("Hines") has filed this action in the United States District Court for the District of Columbia seeking damages and injunctive relief for violations of his rights under the Eighth Amendment to the Constitution as well as the Americans with Disabilities Act ("ADA") which allegedly took place at Rivers Correctional Institution ("RCI") in Winton, North Carolina.

Hines has named GEO Group, Inc. ("GEO"), the Bureau of Prisons ("BOP"), and the Director of the Bureau of Prisons Harley Lappin ("Lappin") as defendants in this action. GEO now files the present memorandum of points and authorities in support of its Motion to Dismiss and alternative Motion to Transfer.

## <u>STATEMENT OF THE FACTS</u>

In February, 2002, prior to his incarceration at RCI, Hines claims to have suffered a debilitating stroke which rendered him totally disabled. (Compl. ¶¶ 18 & 27.) Hines alleges that after suffering the stroke, he regularly received physical therapy from a licensed physical

therapist. (Compl. ¶ 18.) In addition to the stroke, Hines claims to suffer from a myriad of other medical problems which require medication and treatment. (Compl. ¶ 19.)

Hines alleges that since he arrived at RCI in 2004, he has not received adequate medical care. (Compl. ¶ 21.) Hines claims that RCI has failed to address his medical needs by:

- Failing to prescribe "medication or curative treatment" for his lung cancer (Compl. ¶ 22);

- Instructing the staff of the Roanoke Chowan Hospital not to perform a biopsy to determine the extent of Hines' lung cancer (Compl. ¶ 23);

- Denying Hines' request for a wheelchair and physical therapy (Compl. ¶ 24); and

- A failure to treat Hines for a variety of other medical conditions (Compl. ¶ 25).

Hines alleges that these actions on the part of RCI, violate his rights pursuant to the Eight Amendment to the United States Constitution (Compl. ¶ ¶¶ 29-37) as well as the provisions of the ADA. (Compl. ¶¶ 26-28).

## I.    THE COURT SHOULD DISMISS PLAINTIFF'S COMPLAINT BECAUSE THE COURT LACKS PERSONAL JURISDICTION OVER GEO

Hines has failed to establish that this Court has personal jurisdiction over GEO. In order for personal jurisdiction to exist, GEO must consent to this Court exercising personal jurisdiction over it – which it has not – or Hines must establish that this Court's exercise of personal jurisdiction over GEO meets the requirements of the District of Columbia long-arm statute and the Due Process Clause of the Fifth Amendment. *See United States v. Ferrara*, 54 F.3d 825, 828 (D.C. Cir. 1995). This Court has recently reviewed the standard for exercising jurisdiction over an out-of-state defendant such as GEO:

> According to Rule 12(b)(2) of the Federal Rules of Civil Procedure, the plaintiff has the burden of proving that the court has personal jurisdiction over the defendant by showing that the defendant purposefully availed himself of the benefits of the forum state by establishing minimum contacts and that the exercise

of jurisdiction would comport with notions of fair play and substantial justice. "Bare allegations and conclusory statements are insufficient" to establish personal jurisdiction over a defendant. The plaintiff must instead "allege specific facts connecting each defendant with the forum state."

*Richards v. Duke Univ.*, 480 F. Supp. 2d 222, 229 (D.D.C. 2007) (citations omitted). In this case, Hines has failed to allege the necessary facts to establish this Court's jurisdiction over GEO. Thus, GEO's Motion to Dismiss should be granted.

## A. THE DISTRICT OF COLUMBIA CODE DOES NOT PROVIDE FOR THE EXERCISE OF JURISDICTION OVER GEO

A number of statutory provisions govern the exercise of jurisdiction by courts within the District of Columbia over individuals situated outside the District of Columbia, none of which apply to GEO. As GEO is an out-of-state party, Hines must establish that GEO's actions fall within the provisions of D.C. Code § 13-423(a). In relevant part, § 13-423(a) states: "[a] District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's – (1) transacting any business in the District of Columbia...." D.C. Code §§ 13-423(a)(1).

While GEO solicited business from the BOP and various federal entities within the District of Columbia (Compl. ¶ 6), the government contacts exception to the "transacting business" prong of the District's long-arm statute precludes consideration of these acts in a jurisdictional analysis. "The government contacts principle establishes that entry into the District by nonresidents for the purpose of contacting federal governmental agencies cannot serve as a basis for personal jurisdiction." *Freiman v. Lazur*, 925 F. Supp. 14, 24 (D.D.C. 1996).

This Court's decision last year in *Savage v. BioPort, Inc.*, 460 F. Supp. 2d 55 (D.D.C. 2006), illustrates why GEO's contacts with the BOP are insufficient to satisfy the transacting business prong of the District's long arm statute. In *Savage*, the plaintiff sought to hold the

defendant, a corporation with its principal place of business in Michigan, liable for the plaintiff's adverse reaction to an anthrax vaccine administered to him while he was in the Army. *Id.* at 57-58. In attempting to determine whether any of the plaintiff's claims arose out of BioPort's transaction of business within the district, the court stated, "[t]he only contacts [within the District of Columbia] that might give rise to Savage's claims are BioPort's contracts with [the Department of Defense]." The court held that BioPort's contracts with the Department of Defense – and the attempts to win the contracts – could not serve as the basis for personal jurisdiction. *Id.* at 62 ("BioPort's contacts with DoD were made in an attempt to influence government action to purchase [their product]; therefore, its contacts are excluded by the government contacts principal from establishing jurisdiction in the District of Columbia.").

Similarly, in this case, Hines cannot point to any business transacted in the District of Columbia by GEO other than its contracts with the federal government and its attempts to obtain those contracts. Thus, as Hines cannot establish that this Court may exercise personal jurisdiction over GEO, Hines claims against GEO must be dismissed.

## II.   THE COURT SHOULD DISMISS HINES' COMPLAINT BECAUSE HINES HAS FAILED TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

### A.   GEO, AS A PRIVATE CORPORATION, CANNOT BE HELD LIABLE FOR A CONSTITUTIONAL VIOLATION PURSUANT TO THE SUPREME COURT'S HOLDING IN *CORRECTIONAL SERVICES CORP. v. MALESKO*

Hines' attempt to hold GEO liable for a violation of their Eighth Amendment rights is fatally flawed. Pursuant to the Supreme Court's holding in *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 122 S. Ct. 515, 151 L.Ed.2d 456 (2001), private corporations, such as GEO, cannot be held liable for constitutional violations in a *Bivens* action. Thus, as Hines is

unable to prevail on this claim as a matter of law, the Court should enter judgment in favor of GEO on this claim.

In *Malesko*, the Supreme Court was asked to determine whether a private corporation operating various correctional facilities pursuant to a contract with the Bureau of Prisons could held liable for violations of an individual constitutional rights pursuant to *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388, 91 S. Ct. 1999, 29 L.Ed.2d 619 (1971). *See Malesko*, 534 U.S. at 63-66, 122 S. Ct. at 517-19. After reviewing the history and purpose of *Bivens* actions, the Supreme Court held that *Bivens* actions cannot be brought against private corporations acting under the color of federal law. *Id.* at 70, 122 S. Ct. at 521 ("[W]e have consistently rejected invitations to extend *Bivens*, often for reasons that foreclose its extension here.").

The Supreme Court began by revisiting the purpose behind *Bivens* actions, namely "to deter *individual federal officers* from committing constitutional violations." *Id.* (emphasis added). The Supreme Court had previously held that this deterrent effect would not be achieved by allowing liability to be imposed upon the federal officer's employer. *See id.* (citing *FDIC v. Meyer*, 510 U.S. 471, 485, 114 S. Ct. 996, 1005, 151 L.Ed.2d 456 (1994). Attempting to hold a private corporation liable for constitutional violations "is, in every meaningful sense, the same. For if a corporate defendant is available for suit, claimants will focus their collection efforts on it and not the individual directly responsible for the alleged injury. On the logic of *Meyer*, inferring a constitutional tort remedy against a private entity ... is therefore foreclosed." *Id.* (citations omitted).

Moreover, the Supreme Court declined to extend *Bivens* because the plaintiff had available to him "alternative remedies [that] are at least as great, and in may respects greater than anything that could be had under *Bivens*. For example, federal prisoners in private facilities

enjoy a parallel tort remedy that is unavailable to prisoners housed in Government facilities." *Id.* at 72-73, 122 S. Ct. 522. The existence of state tort law remedies along with access to the BOP Administrative Remedy Program indicated to the Supreme Court that an extension of *Bivens* was unnecessary. *Id.* at 73-74, 122 S. Ct. at 523.

The issue currently before the Court is, in every material sense, the same as the issue which confronted the Supreme Court in *Malesko*. Holding the corporation liable for the alleged constitutional violations versus the individuals responsible for making the decisions which led to the alleged violations will not serve the deterrent effect of *Bivens*. Hines has available to him a variety of state common law torts. Thus, a *Bivens* action cannot be maintained against GEO and Hines' Complaint should be dismissed.

**B.    PLAINTIFF HAS FAILED TO STATE A CLAIM AGAINST GEO FOR A VIOLATION OF THE ADA BECAUSE HE CANNOT SATISFY THE ELEMENTS OF AN ADA DISCRIMINATION CLAIM**

Hines' Complaint also includes vague allegations that GEO has violated his rights under the ADA. Hines alleges that he is totally disabled as a result of a 2002 stroke. (Compl. ¶ 27.) Therefore, Hines claims, he is entitled to unspecified "benefits" under the ADA. (Compl. ¶ 27.) Hines proceeds to allege that he has not received his ADA "benefits" and that RCI staff has discriminated against him. (Compl. ¶ 27.)

While Hines does not state the specific benefits to which he believes he is entitled, the ADA does prohibit discrimination against an individual on the basis of disability. The ADA provides that

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(A).   A party seeking to demonstrate a violation of the ADA's non-discrimination provision must show "(1) that he has a disability, as defined by the ADA; (2) that he is otherwise qualified for the benefit in question; and (3) that the benefit was denied under circumstances which suggest the denial was due to discrimination solely on the basis of the disability." *Henry v. Guest Servs., Inc.*, 902 F. Supp. 245, 251 (D.D.C. 1995).

1.    HINES CANNOT DEMONSTRATE THAT HE IS DISABLED WITHIN THE MEANING OF THE ADA

The ADA does not apply to every person afflicted with a physical malady.  Instead, the ADA only applies to "a physical or mental impairment that substantially limits one or more of the major life activities of an individual." 42 U.S.C. § 12102(2)(A).  Therefore, in order to show that a plaintiff lives with a disability which is encompassed by the ADA, a plaintiff must "(1) have an impairment (2) that is related to a major life activity (3) and that substantially limits that major life activity." *Singh v. The George Washington Univ.*, 368 F. Supp. 2d 58, 62 (D.D.C. 2005).

In this case, Hines appears to be alleging that his ability to walk is impaired as a result of his 2002 stroke and a lack of appropriate physical therapy.  (Compl. ¶ 28.)  Hines claims that he is "unable to walk properly" and that his "mobility is not very good." (Compl. ¶ 28.)  Comparing himself to the protagonist in *The Hunchback of Notre Dame*, Hines claims that his walking is made difficult and painful because he must drag his left foot as he walks.  (Compl. ¶ 28.)

Based upon similar allegations in other cases, Hines' claim that he has difficulty walking is insufficient to establish that he is substantially limited in a major life activity.  The Third Circuit Court of Appeals, citing a number of cases, explained that there were no cases "in which a court has held that a plaintiff's moderate difficulty walking or climbing stairs sufficed to

constitute a 'disability' under the ADA. *In fact, it appears that in the several district court cases in which the issue has arisen, the courts have rejected such claims.*" *Kelly v. Drexel Univ.*, 94 F.3d 102, 107 (3d Cir. 1996) (emphasis added).

Federal Courts have regularly rejected claims of disability based when an individual claims that they are "unable to walk properly" and that their "mobility is not very good." *See Wynn v. Whitney Holding Corp.*, 220 F. Supp. 2d 582 (M.D. La. 2002) (noting that moderate restrictions on walking do not amount to a substantial limitation); *Puoci v. City of Chicago*, 81 F. Supp. 2d 893, 896-97 (N.D. Ill. 2000) (holding that plaintiff who walks with a limp, has pain and discomfort when walking on soft surfaces, numbness in his right leg and right thigh when walking, and can only walk for 1 1/2 miles without pain is not disabled); *Talk v. Delta Airlines*, 165 F.3d 1021, 1025 (5th Cir. 1999) (holding that "moderate difficulty experienced by walking does not rise to the level of a disability"); *Banks v. Hit or Miss, Inc.*, 996 F. Supp. 802 (N.D. Ill. 1998) (plaintiff who had corrective surgery on both feet, could only walk short distances, had chronic foot pain, and was limited by her doctor to (1) working no more than eight hours at a time; (2) taking fifteen minute breaks every few hours; (3) not working on a ladder; and (4) wearing lace-up shoes was not disabled); *Kelly v. Drexel Univ.*, 94 F.3d 102 (3d Cir. 1996) (plaintiff who, because of degenerative joint disease, could only walk a mile at a time, could not jog and had trouble climbing stairs, but used no walking aid, was not "disabled"); *Ingles v. The Neiman Marcus Group*, 974 F. Supp. 996 (S.D. Tex. 1997) (plaintiff, who had diabetes, underwent multiple surgeries on his feet (including amputation of toes), wore specially designed shoes, and alleged that walking on hard surfaces harmed his feet was not substantially limited in his ability to walk); *Kriskovic v. Wal-Mart Stores, Inc.*, 948 F. Supp. 1355, 1361 (E.D. Wis. 1996) (plaintiff's ankle injury limiting his ability to walk, stand, lift, push, pull, and climb not a

substantial limitation on a major life activity); *Stone v. Entergy Servs., Inc.*, No. 94-2669, 1995 WL 368473 (E.D. La. June 20, 1995) (plaintiff with partial paralysis, muscle weakness, and uneven legs as residual effects of polio, who testified that he had limited endurance, experienced difficulty climbing stairs, and walked significantly slower than the average person was not substantially limited in ability to walk). Therefore, Hines' allegations that he has difficulty walking and occasional pain, does not satisfy the ADA's requirement that he be substantially limited in a major life activity. Thus, he has failed to state a claim upon which relief may be granted.

2.     HINES' COMPLAINT CONCLUSIVELY ESTABLISHES THAT HE WAS NOT DISCRIMINATED AGAINST SOLELY ON THE BASIS OF HIS DISABILITY

The reach of the ADA only extends to a denial of benefits which takes place "solely on the basis of a disability." *Henry v. Guest Servs., Inc.*, 902 F. Supp. 245, 251 (D.D.C. 1995). To be held liable, the defendant's actions must have been "motivated by discriminatory intent based on Plaintiff's disability." *Id.*

In this case, Hines' Complaint indicates that the alleged discrimination is not the result of his disability. Instead, Hines alleges he is denied medical benefits because GEO is attempting to decrease medical expenses in order to increase its profits. (Compl. ¶¶ 33-34.) As any discrimination which has taken place against Hines has not taken place solely on the basis of his disability, the denial of benefits cannot form the basis for a violation of the ADA. Thus, Hines has failed to state a claim upon which relief may be granted.

**III.    IF THE COURT DOES NOT DISMISS THIS ACTION, PLAINTIFF'S CASE SHOULD BE TRANSFERRED TO THE EASTERN DISTRICT OF NORTH CAROLINA**

In the event that the Court determines that it has personal jurisdiction over GEO and that Hines has stated a claim upon which relief may be granted, the Court should transfer this action to the United States District Court for the Eastern District of North Carolina. This Court has previously determined that the appropriate venue for actions brought by inmates against GEO, and its predecessor Wackenhut Correctional Corporation, is the judicial district in which the GEO Group facility in question is located. *See Holly v. Scott*, No. 1:07-0729 (D.D.C. Aug. 30, 2007); *Jackson v. Fed. Bureau of Prisons*, No. 06-592(GK), 2006 WL 243494 (D.D.C. 2006) (transferring action to the Eastern District of North Carolina); *McCullough v. Bureau of Prisons*, No 05CV374(HHK), 2006 WL 667166 (D.D.C. 2006) (transferring an action to the Eastern District of California); *Rogers v. Fed. Bureau of Prisons*, 357 F. Supp. 2d 147 (D.D.C. 2003) (transferring an action to the Eastern District of California). In this case, transfer to the United States District Court for the Eastern District of North Carolina is appropriate because the action could have been brought in the Eastern District of North Carolina and the balancing of public and private interest factors counsel for the action to be transferred.

**A.    PLAINTIFF COULD HAVE BROUGHT THIS ACTION IN THE EASTERN DISTRICT OF NORTH CAROLINA**

As this action is based upon federal question jurisdiction, the determination of the venue in which this action may be brought is determined by the provisions of 28 U.S.C. § 1391(b). Section 1391(b) provides that

> A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in

(1) a judicial district where any defendant resides, if all defendants reside in the same State,

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or

(3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

Thus, in order for the action to have initially been filed in the Eastern District of North Carolina the Eastern District of North Carolina must satisfy one of these provisions.

Hines' Complaint is exclusively based upon actions which took place at RCI, located in Winton, North Carolina. As Winton is located within the Eastern District of North Carolina, the Eastern District of North Carolina is a judicial district in which a substantial part of the events or omissions giving rise to Hines' claims occurred. Therefore, this action could have been originally brought in the Eastern District of North Carolina.

**B.    THE PUBLIC AND PRIVATE INTERESTS WEIGH IN FAVOR OF TRANSFERRING THIS ACTION TO THE EASTERN DISTRICT OF NORTH CAROLINA.**

After establishing that the action could have been brought in another judicial district, the Court must consider whether a series of private and public interest factors indicate that it would be in the interest of justice and convenience of the parties to transfer this matter. *Rogers v. Fed. Bureau of Prisons*, 257 F. Supp. 2d 147, 147-48 (D.D.C. 2003).

In this case, both the private and public interest factors weigh in favor of transferring this action to the Eastern District of North Carolina. Thus, in the event the court does not dismiss this action, Snyder's Motion to Dismiss should be granted.

1.    THE PRIVATE INTEREST FACTORS WEIGH IN FAVOR OF TRANSFERRING THIS ACTION

A seven factor test is used to determine whether the private interests weigh for or against transfer: (1) the plaintiff's choice of forum; (2) the defendant's forum choice; (3) where the claim arose; (4) the convenience of the parties; (5) the convenience of the witnesses to the extent that they may be unavailable for trial in one of the fora; and (6) the ease of access to sources of proof. *Devaughn v. Inphonic, Inc.*, 403 F. Supp. 2d 68, 71 (D.D.C. 2005).

a.    The District Court for the District of Columbia has limited interest in this action.

While a plaintiff's choice of forum is typically accorded substantial deference, such deference is not appropriate in this case due to the relief sought by Plaintiff. *Rogers v. Fed. Bureau of Prisons*, 257 F. Supp. 2d 147, 148 (2003). This Court has previously held that "[i]n cases brought by prisoners requesting mandamus or declaratory relief ... transferring the action to the district wherein the prisoner is incarcerated serves the interest of justice. Accordingly, when an inmate not incarcerated in the District of Columbia brings a petition for mandamus or declaratory judgment seeking resolution of issues not related to the District of Columbia, the court should, absent extraordinary circumstances, transfer the action as a matter of course to the district of confinement." *Rogers*, 257 F. Supp. 2d at 148 (citations omitted).

Based upon the Prayer for Relief in the Complaint, Hines is seeking a variety of mandatory and declaratory judgments. (Compl. at 19.) Additionally, Hines is incarcerated in the Eastern District of North Carolina. (Compl. ¶ 1.) Thus, based upon this Court's holding in *Rogers*, the action should be transferred to the Eastern District of North Carolina.

       b.       The District Court for the Eastern District of North Carolina has a strong interest in this matter.

For the same reasons that the District of Columbia has a limited interest in this action, North Carolina has a strong interest in this action. The Eastern District of North Carolina serves as the district of confinement for the Plaintiff in this matter and the mandatory and declaratory relief sought by Hines directly impacts RCI. Thus, based upon this Court's holding in *Rogers*, the action should be transferred to the Eastern District of North Carolina.

       c.       Plaintiffs' claim arose in the Eastern District of North Carolina.

All of the claims in this action arise out of actions which allegedly took place at RCI. (Compl. *passim*.) Thus, this factor weighs heavily in favor of transfer of this action to the Eastern District of North Carolina.

       d.       Convenience of the Parties

All of the relevant witnesses to this matter reside in the Eastern District of North Carolina. Thus, this factor should weigh in favor of the transfer of this action to North Carolina.

       e.       Ability to compel witnesses

The geographic limitations placed upon a District Court's subpoena power are described in Rule 45 of the Federal Rules of Civil Procedure. Rule 45 provides that a subpoena may only be served "within the district of the court by which it is issued, or at any place without the district that is within 100 miles of the place" of the proceeding for which testimony is required. *See* Fed. R. Civ. P. 45(b)(2). Moreover, "the court by which a subpoena was issued shall quash or modify the subpoena if it ... requires a person who is not a party ... to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in

person…." *See* Fed. R. Civ. P. 45(c)(3)(A)(ii). Thus, a district court is limited in its ability to compel testimony from individuals located more than 100 miles away from the district court.

It appears that most of the witnesses in this matter should either be parties, employees of parties, or expert witnesses. Thus, there should be little need to compel witnesses. However, to the extent that testimony is necessary from former employees of RCI, it is more likely that they will reside within the subpoena power of the courts within the Eastern District of North Carolina than the District of the District of Columbia. As a result, this factor weighs in favor of transfer of this action to North Carolina.

f.    The majority of sources of proof are found in the Eastern District of North Carolina.

It is likely that many of the fact-witnesses in this matter will be members of the administration and medical staff at RCI. It would be unfair, unduly burdensome, and detrimental to the operations of RCI to require these individuals to travel to the District of Columbia to testify in this matter. To the extent that current inmates are called as witnesses, it would be more convenient to transport them from RCI to a location in the Eastern District of North Carolina than the District of Columbia. Thus, this factor counsels for the transfer of this action to the District Court for the Eastern District of North Carolina.

2.    THE PUBLIC INTEREST FACTORS WEIGH IN FAVOR OF TRANSFERRING THIS ACTION

The public interest factors for the Court's consideration include, "(1) the transferee's familiarity with the governing laws; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home." *Devaughn v. Inphonic, Inc.*, 403 F. Supp. 2d 68, 71 (D.D.C. 2005). These factors weigh in favor of the transfer of this action to the Eastern District of North Carolina.

       a.     The district courts of North Carolina will be more familiar with the North Carolina law of negligence

The claims in this case involve questions of federal law.  As it is presumed that the judges of the District Court for the Eastern District of North Carolina are equally as well versed as the judges of the District Court for the District of Columbia, this factor is neutral.  *See Sierra Club v. Flowers*, 276 F. Supp. 2d 62, 70 n.6 (D.D.C. 2003).

       b.     The docket for the District Court for the District of Columbia is over twice as congested as the docket for the District Court for the Eastern District of North Carolina.

Based upon the 2006 Federal Judicial Caseload Statistics published by the United States Administrative Office of the Courts, the District Court for the District of Columbia had 3,276 cases pending on March 31, 2006.  *See* Office of Judges Programs, Administrative Office of the Courts, Federal Judicial Caseload Statistics, Table C-1 (2006) (annexed hereto as Attachment 4), *available at* http://www.uscourts.gov/caseload2006/contents.html.  The District Court for the Eastern District of North Carolina had 1,391 cases pending on the same date.  *Id.*  As it appears that the docket of the District Court for the District of Columbia has over twice as many cases pending as the District Court for the Eastern District of North Carolina, this factor weighs in favor of transferring the case to the less congested docket in the Eastern District of North Carolina.

       c.     The Eastern District of North Carolina has an interest in adjudicating a controversy regarding those who run its correctional institutions

This Court has previously held that "controversies should be resolved in the locale where they arise."  *Kafack v. Primerica Life Ins. Co.*, 934 F. Supp. 3, 9 (D.D.C.1996).  The alleged wrongdoing in this case was undertaken by individuals working in North Carolina providing

medical care to inmates incarcerated in North Carolina.  As this matter has arisen out of actions taken by employers and citizens within the borders of North Carolina, this factor should weigh in favor of a transfer to North Carolina.  *See Devaughn v. Inphonic, Inc.*, 403 F. Supp. 2d 68, 74 (D.D.C. 2005).

## **CONCLUSION**

Based upon the foregoing arguments and authorities, GEO's Motion to Dismiss should be granted or, in the alternative, this matter should be transferred to the Eastern District of North Carolina.

This the 29th day of October, 2007.

Respectfully submitted,


__/s/ Deborah J. Israel_____
Deborah J. Israel (DC Bar No. 430841)
Womble Carlyle Sandridge & Rice, PLLC
1401 Eye Street, NW, 7th Floor
Washington, DC  20005
(202) 857-4466
*Counsel for Defendant GEO Group, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on this 29th day of October, 2007, a true and correct copy of the

foregoing **DEFENDANT GEO GROUP'S MOTION TO DISMISS AND ALTERNATIVE**

**MOTION TO TRANSFER AND MEMORANDUM OF POINTS AND AUTHORITIES IN**

**SUPPORT** was filed electronically via CM/ECF system and a copy was served via U.S. First-

Class Mail, postage prepaid on the following:

>       Frederick Hines
>       #33592-007
>       Rivers Correctional Institution
>       145 Parker's Fishery Road
>       Winton, NC  27986
>       *Pro Se Plaintiff*

                                        /s/ Deborah J. Israel
                                        Deborah J. Israel

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FREDERICK HINES,                          )
                                          )
                    Plaintiff,            )
                                          )
v.                                        )        Case No. 1:07-cv-01664
                                          )
THE GEO GROUP, INC., et al.,              )
                                          )
                    Defendants.           )
                                          )

---

**ATTACHMENT 1 – UNPUBLISHED CASES CITED BY THE GEO GROUP, INC.**

Westlaw.

Not Reported in F.Supp.                                                                Page 1
Not Reported in F.Supp., 1995 WL 368473 (E.D.La.), 4 A.D. Cases 1112, 10 A.D.D. 576, 6 NDLR P 425
(Cite as: Not Reported in F.Supp.)

Stone v. Entergy Services, Inc.
E.D.La. 1995

United States District Court,E.D. Louisiana.
James H. STONE, Jr.
v.
ENTERGY SERVICES, INC.
Civ. A. No. 94-2669.

June 20, 1995.

MEMORANDUM AND ORDER
SEAR, Chief Judge.

*Background*

*1 Plaintiff James H. Stone, Jr. brings this action against his former employer, Entergy Services, Inc. ("Entergy"), alleging that his termination was the result of discrimination based upon age in violation of the Age Discrimination in Employment Act ("the ADEA"), 29 U.S.C. § 623et seq. and disability in violation of the Americans with Disabilities Act ("the ADA"), 42 U.S.C. §§ 12111et seq. Plaintiff also claims that he was terminated in violation of Louisiana's environmental whistleblowing statute, La. R.S. 30:2027, and Louisiana Civil Code Article 2315.

Plaintiff was hired in 1986 by MSU System Services, Inc. as an environmental analyst in the Environmental and R&D Services department. MSU System Services provided services on a contract basis to the operating companies that comprised the Middle South Utilities Inc. system. The operating companies, such as Louisiana Power & Light Company and New Orleans Public Service Inc. ("NOPSI") generate and sell power. In 1989, Middle South Utilities, Inc. changed its name to Entergy Corporation, and MSU System Services, Inc. changed its name to Entergy Services.

Following the name change, Entergy management began a series of organizational changes that ultimately led to the plaintiff's termination in February

1993. In 1990, management decided that each operating company would maintain their own environmental group, thus making the group that employed plaintiff at Entergy Systems unnecessary. At this time, plaintiff was transferred to the Entergy Services Performance & Design section. Plaintiff continued to perform environmental services, although this was not a major function of his department.

In 1991, as part of reorganization efforts, the Performance and Design section was also disbanded. Plaintiff was placed in a talent pool, and continued to perform his prior duties while searching for another position within the Entergy system. In October, 1991, plaintiff interviewed for a job in a newly created environmental group within Entergy, and was not selected for a position. FN1 However, he was selected for a newly created environmental position in the Entergy Services Transmission department.

Approximately one year after accepting this position, management again ordered a reorganization. Chris Longinotti, an Entergy employee, consolidated the environmental personnel in the Transmission departments throughout the Entergy system into a single group. Longinotti interviewed all employees who held environmental positions within the various Transmission departments in the system. Longinotti did not offer a position to Stone, and informed him that there were no other environmental positions available. Stone was terminated from his position as environmental analyst January 11, 1993 and terminated from Entergy on February 10, 1993.

Stone filed a charge of discrimination with the Equal Employment Opportunity Commission ("the EEOC") on June 17, 1993, claiming that his January 11, 1993 termination was unlawful. FN2 On June 15, 1994, the EEOC entered a no cause determination in favor of Entergy. Plaintiff filed this action on August 12, 1994.

*2 Defendant asserts that plaintiff was terminated

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                      Page 2
Not Reported in F.Supp., 1995 WL 368473 (E.D.La.), 4 A.D. Cases 1112, 10 A.D.D. 576, 6 NDLR P 425
**(Cite as: Not Reported in F.Supp.)**

because he had the lowest average performance evaluation scores of any of the employees considered by Longinotti for the remaining jobs. Defendant has moved for summary judgment on the disability discrimination claim, arguing that the plaintiff is not disabled as defined by the ADA. Defendant also claims that it is entitled to summary judgment on the ADA claim and the ADEA claim because plaintiff has failed to identify any evidence of discriminatory motive on the part of defendant. Additionally, defendant asserts that plaintiff's claims pursuant to Louisiana law have prescribed.

*Analysis*

Rule 56(c) of the Federal Rules of Civil Procedure requires the entry of summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."Fed.R.Civ.P. 56(c). The requirement is that "there be no genuine issue of material fact."*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986) (emphasis in original). A fact is "material" if proof of its existence or non-existence would affect the outcome of the lawsuit under the law applicable to the case. *Id.* at 248.An issue of material fact is "genuine" if the evidence is such that a reasonable jury might return a verdict for the non-moving party. *Id.* at 257.If no reasonable jury could find for the non-movant, summary judgment is appropriate.

*a. Plaintiff's ADA claim*

The ADA prohibits the termination of a qualified individual with a disability because of the disability of such individual. 42 U.S.C. § 12112(a). The term "disability" as used in the ADA means:
(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
(B) a record of such an impairment; or
(C) being regarded as having such an impairment. 42 U.S.C. § 12102(2).

The parties do not dispute that plaintiff suffers from

post polio residuals and has a physical impairment. However, defendant asserts that this impairment does not substantially limit any of Stone's major life activities, and that Stone is therefore not disabled within the meaning of the ADA.

The United States Court of Appeals for the Fifth Circuit has recently provided,
The ADA defines neither "substantial limits" nor "major life activities," but the regulations promulgated by the EEOC under the ADA provide significant guidance. These regulations adopt the same definition of major life activities as used in the Rehabilitation Act. [footnote omitted]."Major life activities means functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working". [footnote omitted]. Whether an impairment substantially limits [footnote omitted] a major life activity is determined in light of (1) the nature and severity of the impairment, (2) its duration or expected duration, and (3) its permanent or expected permanent long-term impact. [footnote omitted].*Dutcher v. Ingalls Shipbuilding,* No. 94-60499, slip op. at 4004 (5th Cir. June 5, 1995).

**\*3** The relevant EEOC regulation defines "substantially limit" as:(i) Unable to perform a major life activity that the average person in the general population can perform; or (ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform the same major life activity. 29 C.F.R. § 1630.2(j)(1)(i), (ii).

The record indicates that Stone's impairment affects his ability to walk, a major life activity. However, defendant claims that Stone is not substantially limited in this activity. Plaintiff testified at his deposition that he has muscle weakness, partial paralysis, one leg longer than the other and one foot longer than the other. Stone Dep. at 134. When asked how he is limited because of these polio residuals, plaintiff testified:
A: I have limited endurance. If I'm climbing stairs,

Not Reported in F.Supp.                                                                                          Page 3
Not Reported in F.Supp., 1995 WL 368473 (E.D.La.), 4 A.D. Cases 1112, 10 A.D.D. 576, 6 NDLR P 425
(Cite as: Not Reported in F.Supp.)

I have to stop after about two flights and rest. I'm unable to run, which means there are a number of sports that I can't participate in. I have limited motion in my body. When I go to bend over, I try to make sure that I either bend from the knees or support myself by holding on to a window sill, piece of furniture, something like that. If I'm walking in a group, if the group does not pace itself to me, I am left far behind. Certain activities I know I'm limited, so I try not to put myself in a position where balance would be a particular problem. Walking down stairs, my right foot won't really support me. I can't lift my right heel off the ground, so in handling stairs I have to be careful to put my whole foot on the stair when I'm going up; otherwise I've got a problem

Q: We talked about your limited endurance, you get winded after about two flights if stairs. You have trouble handling stairs in general because of your right foot?

A: That's correct.

Q: You have limited body motion which results in your needing to bend from the knees or have a support?

A: Yes.

Q: And you need to pace yourself slower than the average person when you're walking?

A: Significantly.

Q: And you do have some trouble with balance?

A: Occasionally.

Q: Not all the time?

A: Not all the time.

Q: Other than these problems, is there any other way you differ from the average person because of your polio residuals?

A: I already told you I can't do a situp. That's about it. *Id.* at 140-42.

Defendant submitted the affidavit of Dr. Stephen Kishner, Associate Professor of Clinical Medicine at the Louisiana State University Medical Center, who examined Stone on April 5, 1995. The affidavit provides in relevant part:

7. In my opinion, Mr. Stone has an approximate total body impairment of 15%;

8. I do not believe that Mr. Stone is disabled, and his polio and post polio syndrome are mild enough

that he does not require the use of any braces, canes, crutches, or a wheelchair. Kishner Affidavit at 2.

*4 Although Dr. Kishner's conclusion that plaintiff is not disabled is not determinative of the issue, his findings that plaintiff has a body impairment of 15% and that he does not require any devices to assist in walking are highly relevant to the determination of whether plaintiff is disabled.

Plaintiff filed a memorandum in opposition to defendant's motion for summary judgment. In the memorandum, plaintiff fails to address defendant's claim that he is not disabled as defined in the ADA. Plaintiff cites no law or evidence to counter defendants assertion, and makes no argument concerning plaintiff's disability.

A careful examination of the plaintiff's deposition testimony regarding the limitations placed upon him by post polio residuals as well as Dr. Kishner's affidavit and the relevant EEOC regulations reveals that plaintiff is not disabled as defined in the ADA. Although plaintiff cannot walk briskly, and has some trouble climbing stairs, I find that his ability to walk is not substantially limited nor significantly restricted. Additionally, the record clearly indicates that plaintiff's ability to work is not affected by his impairment. His deposition testimony provides that plaintiff has been employed continuously since graduating from college, and is currently employed. Accordingly, plaintiff does not have a physical impairment that substantially limits a major life activity.

The ADA also provides that plaintiff may maintain an action pursuant to the statute if he is "regarded as having such an impairment". However, plaintiff has not offered any evidence that anyone at Entergy regarded him as having an impairment that substantially limits one or more of his major life activities. Additionally, defendant has submitted the affidavit of Chris Longinotti, the Entergy employee who decided not to offer plaintiff a position in the reduced environmental services group. The affidavit provides at page 4, "I have never considered Mr.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                    Page 4
Not Reported in F.Supp., 1995 WL 368473 (E.D.La.), 4 A.D. Cases 1112, 10 A.D.D. 576, 6 NDLR P 425
(Cite as: Not Reported in F.Supp.)

Stone disabled". Plaintiff has not introduced any evidence that any of defendant's employees regarded him as disabled, nor has he raised this argument. Stone has not been regarded as having an impairment that substantially limits a major life activity.

Based on the evidence submitted plaintiff fails to establish that he is disabled as defined in the ADA. Defendant's motion for summary judgment on plaintiffs ADA claim is therefore GRANTED.

### b. Plaintiff's ADEA Claim

Plaintiff also alleges that he was terminated in violation of the ADEA. Plaintiff, who was fifty years of age when terminated, is a member of the class protected by the ADEA. Employment discrimination cases, including cases brought pursuant to the ADEA, are analyzed in three stages. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973), *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 256 (1981). The plaintiff must first prove a prima facie case of discrimination. The United States Court of Appeals for the Fifth Circuit has consistently defined the four elements of the prima facie case. Plaintiff must demonstrate (a) membership in the protected class, (b) termination, (c) from a position for which they are qualified, and (d) the replacement of the plaintiff by someone outside the protected class. *Davis v. Chevron U.S.A., Inc.,* 14 F.3d 1082, 1087 (5th Cir. 1994), *Frazier v. Garrison L.S.D.,* 980 F.2d 1514, 1526 (5th Cir. 1993), *Valdez v. San Antonio Chamber of Commerce,* 974 F.2d 592, 596 (5th Cir. 1992).

*5 Proof of a prima facie case creates a presumption of discrimination. The defendant may rebut this presumption by proffering a non-discriminatory, legitimate explanation for the firing. The plaintiff must then demonstrate that the rationale offered by the defendant is merely a pretext for discrimination. The plaintiff cannot prevail by demonstrating that the defendant's reason is unwise or unbelievable, but rather always retains the burden of producing evidence of discrimination. *St. Mary's Honor Center v. Hicks,* 113 S. Ct. 2742,

2749 (1993)."[T]he plaintiff is left with the ultimate burden, which has never left him: that of proving that the defendant intentionally discriminated against him."*Moham v. Steego Corp.,* 3 F.3d 873, 875 (5th Cir. 1993), *cert. denied,* 114 S.Ct. 1307 (1994). This can be done by either direct or circumstantial evidence, *Burdine,* 450 U.S. at 256, but failure to meet this burden mandates judgment for the defendant.

Plaintiff claims that this legal framework is inapplicable to his case because he has produced direct evidence of discrimination. Regardless of whether this is a correct statement of the law, plaintiff has failed to identify any direct evidence of discrimination and therefore this his claim must be considered in the *Burdine* framework. Plaintiff contends that he received favorable performance reviews in the years 1986-1991 which did not accurately reflect management's assessment of his performance, as indicated by his termination in February 1993. He claims that he was never criticized by his superiors because of his age and physical impairment. He asserts that the failure to criticize his work constitutes direct evidence of discrimination.

However, plaintiff has not demonstrated that his reviews were inaccurate. Defendant has simply provided evidence that although satisfactory, plaintiff's performance was inferior to the other applicants for environmental analyst positions. Moreover, even if plaintiff had demonstrated that his performance reviews were inaccurate, he has presented no evidence that the inaccuracies were related to age or physical condition.

An analysis of the record under the proper framework for employment discrimination cases reveals that there is no evidence that defendant was motivated by a purpose forbidden by the ADEA.

Plaintiff has presented a prima facie case. He is a member of the protected class, he was terminated from his position as an environmental analyst, he was qualified for that position, and some employees outside the protected class were retained in environmental analyst positions.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                                    Page 5
Not Reported in F.Supp., 1995 WL 368473 (E.D.La.), 4 A.D. Cases 1112, 10 A.D.D. 576, 6 NDLR P 425
(Cite as: Not Reported in F.Supp.)

However, defendant has articulated non-discriminatory reasons for Stone's termination. Longinotti testified at his deposition and provided an affidavit concerning the manner in which he selected the employees for the available environmental analyst positions. Longinotti's affidavit provides that he grouped all of the applicants considered for a position by the State in which they lived. There were five candidates eligible for three positions in the state of Louisiana. Longinotti asserts that he compared applicants' performance evaluation scores for 1990 and 1991, and that plaintiff had the lowest average performance scores of the five candidates. Longinotti provided that he discussed each candidate's performance with their direct supervisor, and that Mr. Stone was described as "mediocre". Longinotti also explained that in 1988 plaintiff worked on a project for Longinotti which was not completed satisfactorily. Wayne Rose, an employee in Entergy's Human Resource Department also provided an affidavit and an exhibit that demonstrate that at the time the five positions were filled, the other applicant who was not offered a position was outside the protected class, while two of the three successful applicants were members of the protected class. Entergy has clearly met its burden of providing non-discriminatory reasons for Stone's discharge.

*6 To survive defendant's motion for summary judgment, Stone must produce some evidence upon which a jury could find that these proffered reasons are pretextual and that discrimination was the true motivation for his termination. Stone has not provided any evidence that suggests that the reasons offered by Entergy are pretextual. Stone has introduced no evidence that disputes Longinotti's justifications for his termination.

Additionally, Stone has failed to meet his ultimate burden of producing evidence of discrimination. Even had Stone succeeded at showing that each and every reason proffered by Entergy was pretextual, he would still be required to identify evidence of discrimination upon which a jury could base a verdict in his favor.

Stone has not identified any direct evidence of discrimination. In his deposition, Stone testified to various ways in which he believes Entergy discriminated against him. In some years, he was not allowed to attend any professional seminars. He was not always included in group lunches and other social events. He believes he received inadequate clerical support. However, Stone has not demonstrated that he was treated differently from any other. employee due to his age. It is not enough to demonstrate that Stone was unhappy with certain conditions of his employment, or that some employees may have been treated more favorably than the plaintiff. Stone must show that defendant was motivated by an illegal discriminatory purpose, and there is simply no evidence in the record which connects Entergy's treatment of Stone to discrimination based upon age.

Had Stone succeeded in producing enough evidence to support a jury verdict in his favor, the Court could not balance the evidence presented by both sides. This is the province of the jury in a Title VII action. However, the Court must determine if the sum of the proffered evidence put forth by the non-movant in a summary judgment motion is sufficient to support a jury verdict in his favor. Plaintiff has simply failed to identify any evidence of discrimination.

### c. Plaintiff's Claim for Environmental Whistleblowing

Plaintiff also alleges that his termination violated Louisiana's environmental whistleblowing statute, La. R.S. 30:2027, because he was terminated for bringing environmental violations to the attention of Entergy management. This claim is subject to a one year prescriptive period. Plaintiff was formally terminated in February 1993 which provides the last possible date that the prescriptive period began, and this suit was not filed until August 1994. Accordingly, plaintiff may not maintain this claim in this Court and it must be dismissed.

Plaintiff also filed an action alleging a violation of La. R.S. 30:2027 in Louisiana state court on Janu-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                      Page 6
Not Reported in F.Supp., 1995 WL 368473 (E.D.La.), 4 A.D. Cases 1112, 10 A.D.D. 576, 6 NDLR P 425
**(Cite as: Not Reported in F.Supp.)**

ary 28, 1994. Defendant argues that the prescription period for these alleged state law violations began in December, 1993 when plaintiff learned that he was not selected by Longinotti and that plaintiff's state court claims are likewise prescribed. Defendant therefore moves this Court to dismiss plaintiff's environmental whistleblowing claim with prejudice. Plaintiff argues that he was unaware of the alleged retaliation against him until his termination in February, 1993 and that therefore his state court claims were timely filed. He requests that his whistleblowing claim be dismissed without prejudice so that it may be pursued in state court.

*7 This Court will not determine disputed issues of fact regarding when plaintiff became aware of the alleged retaliation against him since the issue is irrelevant to the claim filed here. The parties must litigate the issue of whether plaintiffs state court claims have prescribed in state court. Accordingly, plaintiffs claim pursuant to Louisiana's environmental whistle blowing statute is dismissed without prejudice.

### d. Plaintiff's claim pursuant to Louisiana Civil Code Article 2315

Plaintiff also claims that his termination violated Louisiana Civil Code Article 2315, a claim that is governed by a one-year prescriptive period. Accordingly, this claim is dismissed without prejudice.

Accordingly,

IT IS ORDERED that defendant's motion for summary judgment of plaintiff's ADA claim is GRANTED.

IT IS FURTHER ORDERED that defendant's motion for summary judgment of plaintiff's ADEA claim is GRANTED.

IT IS FURTHER ORDERED that plaintiff's claim brought pursuant to Louisiana Revised Statute 30:2027, the environmental whistleblowing statute, is DISMISSED WITHOUT PREJUDICE.

IT IS FURTHER ORDERED that plaintiff's claim brought pursuant to Louisiana Civil Code Article 2315 is DISMISSED WITHOUT PREJUDICE.

> FN1. Plaintiff has alleged during discovery of this action that the decision not to offer him a newly created position in October 1991 was based upon discrimination. However, no claim of discrimination regarding the 1991 decision was filed with the Equal Employment Opportunity Commission within 180 days of the alleged unlawful practice as required by the Age Discrimination in Employment Act. 29 U.S.C. § 626(d). Accordingly, plaintiff's claim that this decision was discriminatory cannot be considered.

> FN2. In the EEOC Charge of Discrimination, plaintiff indicated that the earliest date that discrimination against him took place was January 11, 1993. Defendant's Exhibit 2.

E.D.La. 1995
Stone v. Entergy Services, Inc.
Not Reported in F.Supp., 1995 WL 368473 (E.D.La.), 4 A.D. Cases 1112, 10 A.D.D. 576, 6 NDLR P 425

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**FILED**

AUG 3 0 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

| | | |
|---|---|---|
| **RICKY LEE HOLLY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Civil Action No. 1:07-0729 (RJL)** |
| | ) | |
| **WILLIE SCOTT,** *et al.* | ) | |
| | ) | |
| **Defendants.** | ) | |

**ORDER**

(August 28, 2007) [#4, #7, #8]

Upon Consideration of the Motion to Dismiss, or Alternatively, to Transfer, filed by defendant George Snyder, plaintiff Ricky Lee Holly's indication that he does not oppose the motion to transfer, and the Court having concluded that convenience and justice favor transfer to North Carolina where Snyder resides, the operative facts surrounding Holly's claims took place, and records and most witnesses are located[1], defendant Snyder's motion to transfer pursuant to § 1404(a) is granted. Accordingly, it is hereby

**ORDERED** that defendant's motion to dismiss, or alternatively, to transfer is DENIED in part and GRANTED in part. The motion to dismiss is denied, and the motion to transfer venue to the Eastern District of North Carolina is granted, and it is further,

---

[1] The location of the other defendant, Willie Scott, is unknown. (Snyder Mot. at 8 n.2.)

**ORDERED** that the Clerk of the Court shall transfer this case to the United States District Court for the Eastern District of North Carolina,

It is so **ORDERED**.

RICHARD J. LEON
**United States District Judge**

2



Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 2434938 (D.D.C.)
(Cite as: 2006 WL 2434938 (D.D.C.))

Page 1

**c**

Only the Westlaw citation is currently available.

United States District Court,
District of Columbia.
Michael JACKSON, Plaintiff,
v.
FEDERAL BUREAU OF PRISONS, et al., Defend-
ants.
**Civil Action No. 06-592(GK).**

Aug. 22, 2006.
Michael Jackson, Winton, NC, pro se.

Eric J. Janson, U.S. Attorney's Office, Paul A. Ka-
plan, Womble Carlyle Sandridge & Rice PLLC,
Washington, DC, for Defendants.

### *MEMORANDUM OPINION*
GLADYS KESSLER, District Judge.

**\*1** Plaintiff, a federal inmate proceeding *pro se,*
brought this action alleging that the Defendants viol-
ated the Religious Land Use and Institutionalized
Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc, by
failing to provide him the pork-free diet required by
his religious beliefs. The complaint names as Defend-
ants the Bureau of Prisons ("BOP") and Harley Lap-
pin, the Director of BOP ("Federal Defendants"), and
the **GEO** Group, Inc. and two of its employees, Dav-
id Palmer, Assistant Warden at the Rivers Correc-
tional Institution ("RCI"), and James K. Brown, the
prison chaplain. ("**GEO** Defendants"). Defendants
have filed motions to dismiss.

### Background
Plaintiff is incarcerated at the RCI in Winton, North
Carolina. Complaint, p. 1. The RCI is operated by the
Geo Group, Inc. pursuant to a contract with the BOP.
*Id.,* p. 5. Plaintiff alleges that he is a practicing Sunni
Muslim and that his religion has strict dietary laws
and requirements. *Id.,* p. 4. On July 5, 2005, Plaintiff
claims he was in the RCI's dining hall during the
serving of special diets. *Id.,* p. 3. The dining staff
handed him a food tray containing pinto beans with
pork. *Id.* He returned the tray and was given one
without pork. *Id.* The consumption of pork violates

Plaintiff's Muslim faith. *Id.,* p. 2.

Plaintiff met with defendant James K. Brown, the
chaplain at RCI, and complained to him that he had
failed to offer the prison's Muslim community the op-
portunity to observe their faith's dietary requirements.
*Id.,* p. 4. Plaintiff also filed an informal Request for
an Administrative Remedy raising the issue of the
pork in his food. *Id.,* Ex. 1. He alleges that after the
request was denied, he met with Assistant Warden
David Farmer. *Id.,* p. 4. Defendant Farmer stated that
the BOP's dietary program complied with Plaintiff's
religious requirements. *Id.*

In response to Plaintiff's appeal of the denial of his
grievance, RCI's Warden acknowledged that a case of
pinto beans containing pork was inadvertently re-
ceived into the facility. *Id.,* Ex. 2. According to the
Warden, the case of beans was immediately disposed
of and not served to the inmates. *Id.* He also affirmed
that the food served at RCI was pork-free. *Id.*
Plaintiff's further administrative appeals to the BOP
were denied. *Id.,* p. 3.

### Standard of Review
Pursuant to Rules 12(b)(1) and 12(b)(6) of the Feder-
al Rules of Civil Procedure, the Federal Defendants
move to dismiss for lack of subject matter jurisdic-
tion and for failure to state a claim upon which relief
can be granted. A Rule 12(b)(6) motion to dismiss
tests the legal sufficiency of a complaint. *Browning v.
Clinton,* 292 F.3d 235, 242 (D.C.Cir.2002). The com-
plaint need only set forth a short and plain statement
of the claim, giving the defendant fair notice of the
claim and the grounds upon which it rests. *Kingman
Park Civic Ass'n v. Williams,* 348 F.3d 1033, 1040
(D.C.Cir.2003) (citing *Conley v. Gibson,* 355 U.S.
41, 47 (1957)).

**\*2** A court should not dismiss a complaint for failure
to state a claim unless the defendant can show bey-
ond doubt that the plaintiff can prove no set of facts
in support of his claim that would entitle him to re-
lief. *Warren v. Dist. of Columbia,* 353 F.3d 36, 37
(D.C.Cir.2004); *Kingman Park,* 348 F.3d at 1040.
Thus, in resolving a Rule 12(b)(1) or 12(b)(6) mo-

Not Reported in F.Supp.2d                                                                                         Page 2
Not Reported in F.Supp.2d, 2006 WL 2434938 (D.D.C.)
**(Cite as: 2006 WL 2434938 (D.D.C.))**

tion, the court must treat the complaint's factual allegations as true and draw all reasonable inferences therefrom in the plaintiff's favor. *Macharia v. United States,* 334 F.3d 61, 67 (D.C.Cir.2003), *cert. denied,* 540 U.S. 1149 (2004); *Holy Land Found. for Relief & Dev. v. Ashcroft,* 333 F.3d 156, 165 (D.C.Cir.2003), *cert. denied,* 540 U.S. 1218 (2004). The court need not accept as true inferences unsupported by facts set out in the complaint or legal conclusions cast as factual allegations. *Warren,* 353 F.3d at 39; *Browning,* 292 F.3d at 242. In addition, the plaintiff has the burden of proving subject matter jurisdiction by a preponderance of the evidence. *Felter v. Norton,* 412 F.Supp.2d 118, 122 (D.D.C.2006) (citation and quotation omitted).

The **GEO** Defendants assert that this Court lacks personal jurisdiction over them. The plaintiff bears the burden of establishing personal jurisdiction over each defendant. *Atlantigas Corp. v. Nisource, Inc.,* 290 F.Supp.2d 34, 42 (D.D.C.2003). In order to meet his burden, a plaintiff must allege specific facts on which personal jurisdiction can be based; he cannot rely on conclusory allegations. *Id.* Furthermore, a plaintiff cannot aggregate allegations concerning multiple defendants in order to demonstrate personal jurisdiction over any individual defendant. *Id.* In deciding a motion to dismiss for lack of personal jurisdiction under Fed.R.Civ.P. 12(b)(2), the Court need not treat plaintiff's allegations as true. *Id.* Rather, the Court may consider and weigh affidavits and other relevant matter in making the jurisdictional determination. *Id.*

### Discussion
*Federal Defendants*

The Federal Defendants move to dismiss on the ground that the RLUIPA does not apply to the BOP. In order to properly evaluate the Defendants' argument, it is necessary to understand the legislative and jurisprudential history of this area of law. RLUIPA is the "latest of long-running congressional efforts to accord religious exercise heightened protection from government-imposed burdens" than that required by the Supreme Court's free exercise clause jurisprudence. *Cutter v. Wilkinson,* 125 S.Ct. 2113, 2117-2118 (2005). To that end, in 1993, Congress enacted the Religious Freedom Restoration Act

("RFRA"). That statute was intended to overturn *Employment Div., Dep't of Human Resources of Or. v. Smith,* 494 U.S. 872 (1990), a decision which held that the First Amendment permits governments to apply neutral generally applicable laws to a religious practice without a showing of a compelling state interest. *Cutter,* 125 S.Ct. at 2118; *Caldwell v. Caesar,* 150 F.Supp.2d 50, 55 (D.D.C.2001). RFRA provides that a government "shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability" unless the government demonstrates that it "is in furtherance of a compelling government interest" and "is the least restrictive means of furthering that compelling government interest." 42 U.S.C. § 2000bb.

*3 In *City of Boerne v. Flores,* 521 U.S. 507, 523-36 (1997), the Supreme Court held that RFRA was unconstitutional as applied to the states. A number of courts of appeals, including ours, have held that RFRA still applies to the federal government. *See Cutter,* 125 S.Ct. at 2118; *Henderson v. Kennedy,* 265 F.3d 1072, 1073 (D.C.Cir.2001); *Gartrell v. Ashcroft,* 191 F.Supp.2d 23, 37 (D.D.C.2002). [FN1]

> FN1. The Supreme Court has yet to decide the issue. *Cutter,* 125 S.Ct. at 2118 n. 2.

In response to the Supreme Court invalidating RFRA as applied to the states, Congress enacted RLUIPA. *Cutter,* 125 S.Ct. at 2118. Section 3 of RLUIPA, 42 U.S.C. § 2000cc-1, applies to religious exercise by institutionalized persons. The statute provides that "no *government* shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution," unless the government demonstrates that the burden furthers "a compelling government interest" and that it has adopted the "least restrictive means" to serve that interest. *Id .,* § 2000-cc-1(a)(1)-(2)(emphasis supplied). An individual affected by such a burden has a right to pursue judicial relief. *Id.,* § 2000-cc-2(a).

Under RLUIPA, the term "government" is defined as (1) a State, county, municipality, or other government entity created under the authority of a State; (2) any branch, department, agency, instrumentality, or official of these entities; and (3) any other person acting

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                   Page 3
Not Reported in F.Supp.2d, 2006 WL 2434938 (D.D.C.)
**(Cite as: 2006 WL 2434938 (D.D.C.))**

under color of State law. § 2000cc-5(4). The statute does not create a cause of action against the federal government or its correctional facilities. *Ish Yerush-alayim v. United States,* 374 F.3d 89, 92 (2d Cir.2004); *Bloch v. Samuels,* No. H-04-4861, 2006 WL 2239016, at *7 (S.D.Tex. Aug. 3, 2006); *Sample v. Lappin,* 424 F.Supp.2d 187, 192 n. 3 (D.D.C.2006); *Terrero v. Watts,* No. 202-134, 2005 WL 2838142, at *5 (S.D.Ga. Oct. 26, 2005). This conclusion is the only sensible construction of the statute. RLUIPA was specifically enacted to counter a Supreme Court decision holding that the identical provisions of RFRA could not be applied to the states. *Cutter,* 125 S.Ct. at 2118. In addition, as noted above, inmates still retain a cause of action under RFRA against the federal government. Therefore, Plaintiff cannot bring a RLUIPA claim against the Federal Defendants.

### GEO *Defendants*

These Defendants move to dismiss based on lack of personal jurisdiction. The caption of Plaintiff's complaint lists the addresses of Defendants **Geo** Group, Inc., David Farmer, and James K. Brown as being in Winton, North Carolina. The complaint does not allege that the Defendants reside in the District of Columbia or conduct business here.

The District of Columbia long-arm statute, D.C.Code § 13-423, is the only basis upon which personal jurisdiction may be exercised over defendants who do not reside within or maintain a place of business in the District of Columbia. *Reuber v. United States,* 750 F.2d 1039, 1040 (D.C.Cir.1984); *Robertson v. Merola,* 895 F.Supp. 1, 3 (D.D.C.1995). The District of Columbia long-arm statute provides that a Court may exercise personal jurisdiction over those who have (1) transacted business in the District of Columbia; (2) contracted to supply services in the District of Columbia; (3) caused a tortious injury in the District of Columbia by an act or omission in the District; or (4) caused a tortious injury in the District of Columbia by an act or omission outside the District while regularly doing or soliciting business or engaging in any other persistent course of conduct in the District. D.C.Code § 13-423(a)(1)- (4)(2006). For there to be personal jurisdiction under the long-arm

statute, the plaintiff must allege some specific facts evidencing purposeful activity by defendants in the District of Columbia by which they invoked the benefits and protections of its laws and specific acts connecting the defendants with the forum. *See, e.g., Cellutech v. Centennial Cellular Corp.,* 871 F.Supp. 46, 48 (D.D.C.1994).

**\*4** Plaintiff contends that the Court has jurisdiction over the **GEO** Defendants by virtue of its contract with the BOP to operate the RCI . [FN2] In 1997, Congress transferred responsibility for the imprisonment of felons convicted under the D.C.Code from the District of Columbia to the federal government pursuant to the National Capital Revitalization and Self-Government Improvement Act of 1997 ("Revitalization Act"). *Fletcher v. Reilly,* 433 F.3d 867, 870 (D.C.Cir.2006); *see* D.C.Code §§ 24-101 *et seq.* The statute provides that D.C.Code offenders "shall be designated by the Bureau of Prisons to a penal or correctional facility operated or contracted by the Bureau of Prisons ..." *Id.,* § 24-101(a). In addition, the Revitalization Act mandates that fifty percent of D.C. inmates be incarcerated in private correctional facilities. *Id.,* § 24-101(c)(1)(B).

> FN2. Following briefing on the Defendants' motions to dismiss, Plaintiff filed a motion for jurisdictional discovery. Such discovery is only warranted if the Plaintiff reasonably demonstrates that the discovery will enable him to show that the court has personal jurisdiction over the defendants. *GTE New Media Servs., Inc. v. BellSouth Corp.,* 199 F.3d 1343, 1351 (D.C.Cir.2000); *Caribbean Broad Sys. v. Cable & Wireless PLC,* 148 F.3d 1080, 1090 (D.C.Cir.1998). In his motion, Plaintiff alleges that discovery will demonstrate that the **GEO** Group has extensive contact with BOP and other federal agencies in the District of Columbia, as well as the D.C. Jail. Plaintiff contends that this information would indicate that the **GEO** Group is transacting business in the District of Columbia.
>
> As the Court notes below, none of these allegations, if proven, would establish personal jurisdiction over the **GEO** Defendants.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 4
Not Reported in F.Supp.2d, 2006 WL 2434938 (D.D.C.)
**(Cite as: 2006 WL 2434938 (D.D.C.))**

The Court will deny Plaintiff's motion.

The BOP and **Wackenhut** Correctional Corporation, now part of the **GEO** Group, entered into a contract for **Wackenhut** to house D.C. inmates pursuant to the Revitalization Act. *See* Pl.'s Opp. to Deft.'s Mot. to Dismiss, Ex. 1. The fact that this agreement was made pursuant to the Revitalization Act or executed within the District of Columbia does not confer personal jurisdiction over out-of-state defendants. *See Ali v. Dist. of Columbia,* 278 F.3d 1, 7 (D.C.Cir.2002); *Ibrahim v. Dist. of Columbia,* 357 F.Supp.2d 187, 192-94 (D.D.C.2004).

None of the **GEO** Defendants resides in the District of Columbia. Plaintiff's complaint alleges acts and omissions at the RCI in North Carolina. Plaintiff has not alleged that he suffered an injury in the District of Columbia. The only connection this case has with the District of Columbia is that the BOP is headquartered here. This fact by itself is insufficient to confer personal jurisdiction over the **GEO** Defendants. *See Cameron v. Thornburgh,* 983 F.2d 253, 256 (D.C.Cir.1993). Accordingly, this Court lacks personal jurisdiction over the individual defendants.

The Court may transfer an action even though it lacks personal jurisdiction over the defendants. *Naartex Consulting Corp. v. Watt,* 722 F.2d 779, 789 (D.C.Cir.1983); *Hoffman v. Fairfax County Redevelopment & Hous. Auth.,* 276 F.Supp.2d 14, 16 n. 1 (D.D.C.2003). Transfer is appropriate under 28 U.S.C. § 1406(a) "when procedural obstacles [such as lack of personal jurisdiction and improper **venue**] impede an expeditious and orderly adjudication on the merits." *Sinclair v. Kleindienst,* 711 F.2d 291, 293-94 (D.C.Cir.1983) (citing *Goldlawr, Inc. v. Heiman,* 369 U.S. 463, 466-67 (1962)); *Crenshaw v. Antokol,* 287 F.Supp.2d 37, 45 (D.D.C.2003). The decision to transfer an action on this basis is left to the discretion of the court. *Novak-Canzeri v. Saud,* 864 F.Supp. 203, 207 (D.D.C.1994). As a general matter, a transfer of the case is favored over a dismissal. *El v. Belden,* 360 F.Supp.2d 90, 93 (D.D.C.2004). [FN3]

> FN3. Unlike the Federal Defendants, the **GEO** Defendants have not moved to dismiss for lack of subject matter jurisdiction or for

failure to state a claim.

The alleged events giving rise to Plaintiff's claim occurred at the RCI, which is located in the Eastern District of North Carolina. The **GEO** Defendants are also in the same district. Since Plaintiff is incarcerated at RCI, his BOP records are no doubt maintained there. In the interest of justice, therefore, the Court will transfer the action against the **GEO** Defendants to the United States District Court for the Eastern District of North Carolina.

**Conclusion**

*5 Based on the foregoing, the Federal Defendants' motion to dismiss will be granted. The claim against the **GEO** Defendants will be transferred. An appropriate order accompanies this Memorandum Opinion.

Not Reported in F.Supp.2d, 2006 WL 2434938 (D.D.C.)

END OF DOCUMENT

Westlaw.

Not Reported in F.Supp.2d                                             Page 1
Not Reported in F.Supp.2d, 2006 WL 667166 (D.D.C.)
(Cite as: 2006 WL 667166 (D.D.C.))

C

Only the Westlaw citation is currently available.

United States District Court, District of Columbia.
Perry A. MCCULLOUGH, Plaintiff,
v.
BUREAU OF PRISONS, et al., Defendants.
No. 05CV374 (HHK).

March 15, 2006.
Perry A. McCullough, Terminal Island, CA, pro se.

John F. Henault, Jr., U.S. Attorney's Office, Washington, DC, Paul A. Kaplan, Paul A. Kaplan, Womble Carlyle Sandridge & Rice PLLC, Washington, DC, for Defendants.

*MEMORANDUM OPINION*
KENNEDY, J.

**\*1** This matter is before the Court on defendants' motions to dismiss. Having considered the motions and plaintiff's oppositions, the Court will transfer this action to the United States District Court for the Eastern District of California.

I. BACKGROUND

At all times relevant to the complaint, plaintiff was a federal prisoner incarcerated at the Taft Correctional Institution ("TCI"), a facility which **Wackenhut** Corrections Corporation (**"Wackenhut"**) operated under contract with the Federal Bureau of Prisons ("BOP"). [FN1] Compl. ¶¶ 1-3 (Part II). [FN2]

FN1. Plaintiff was transferred from TCI to the Federal Corrections Institution in Tucson, Arizona. Compl. ¶¶ 69, 82 (Part III). Later he was transferred to the Federal Corrections Institution in Terminal Island, California, where he currently is incarcerated in a low security facility. *See id.* (Part VI).

FN2. Plaintiff prepared his Complaint in six sections: Nature of the Action (Part I), Parties to the Action (Part II), Factual Basis for the Verified Complaint for Damages (Plaintiff's Affidavit) (Part III), Causes of

Action (Part IV), Classification of Defendants (Part V), and Relief Requested (Part VI). Each section is set forth in sequentially numbered paragraphs. References to the Complaint generally will include the paragraph number and section number.

Plaintiff states that defendants falsified records pertaining to disciplinary actions taken against him following his alleged leadership role in effecting a food and work strike at TCI in November 2001. Although defendants determined that plaintiff committed no disciplinary violation, records identifying his role in the strike remain in his Central File. Defendants' reliance on these erroneous records, plaintiff contends, led to adverse determinations with respect to his supervision and security levels.

Plaintiff, who is proceeding *pro se*, brings this action under the Privacy Act, *see* 5 U.S.C. § 552a, against **Wackenhut** and the BOP. He alleges that defendants "generated several falsified documents which they used as the proximate cause for the improper retaliatory transfer of the Plaintiff." Compl. ¶ 69 (Part III). He further alleges that defendants placed those falsified documents in his Central File, and used "those documents to maintain inaccurate records for the purpose of adversely affect [sic] Plaintiff through a retaliatory transfer to a higher level institution, as a special offender, under Central Inmate Monitoring." [FN3] *Id.* (Part IV).

FN3. Evidently, plaintiff was to be separated from the two inmates with whom he allegedly planned the food and work strike at TCI. *See* Compl. ¶¶ 70, 72 & Ex. V (December 17, 2001 Memorandum approving classification as a Central Inmate Monitoring case).

In addition to his Privacy Act claims, plaintiff brings civil rights claims under *Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), against 22 individuals who are employees either of the BOP or **Wackenhut.** He contends that these defendants vi-

Not Reported in F.Supp.2d                                                    Page 2
Not Reported in F.Supp.2d, 2006 WL 667166 (D.D.C.)
**(Cite as: 2006 WL 667166 (D.D.C.))**

olated rights protected by the Fifth, Eighth, and Four-
teenth Amendments to the United States Constitution
by denying him due process and by subjecting him to
cruel and unusual punishment. *See* Compl. (Part IV).
He demands injunctive relief and monetary damages.
*Id.*

## II. DISCUSSION
### A. Privacy Act Claims [FN4]
FN4. Plaintiff does not bring Privacy Act
claims against any of the individual defend-
ants. *See* Compl. ¶ 1 (Part I); Pl.'s Opp. to
Fed. Defs.' Mot. to Dismiss at 9. If he had,
the claims would be dismissed because indi-
viduals, government officials and govern-
ment employees are not proper parties to a
Privacy Act action. *Armstrong v. United
States Bureau of Prisons,* 976 F.Supp. 17,
23 (D.D.C.1997), *aff'd,* 1998 WL 65543
(D.C.Cir. Jan.30, 1998); *see Reid v. Federal
Bureau of Prisons,* No. 04-1845, 2005 WL
1699425 at *2 (D.D.C. July 20, 2005).

Plaintiff purports to bring Privacy Act claims against
**Wackenhut,** a private corporation which operated
the Taft Correctional Institution in Taft, California
pursuant to a contract with BOP. Compl. ¶¶ 2-3. Ac-
cording to BOP's website (www.bop.gov), TCI is a
private facility.

Generally, the Privacy Act regulates the collection,
maintenance, and disclosure of personal information
by federal executive branch agencies. It does not cov-
er a private corporation, which is not an "agency" for
purposes of the Privacy Act. *Unt v. Aerospace Corp.,*
765 F.2d 1440, 1450-51 (D.C.Cir.1985) (concluding
that private nonprofit corporation formed to provide
engineering and technical services to Air Force mis-
sile and space program is not an agency as term is
defined in Privacy Act); *Dennie v. Univ. of Pitts-
burgh Sch. of Med.,* 589 F.Supp. 348, 352
(D.Vi.1984) (dismissing hospital and medical school
as defendants for plaintiff's failure to allege facts
showing substantial federal control or supervision ne-
cessary to characterize entities as "federal" for pur-
poses of Privacy Act jurisdiction), *aff'd,* 770 F.2d
1068 (Table) (3d Cir.), *cert. denied,* 474 U.S. 849,
106 S.Ct. 144, 88 L.Ed.2d 119 (1985); *see* 5 U.S.C.

§§ 551(1), 552(f), 552a(1). Accordingly, plaintiff's
Privacy Act claims against **Wackenhut** must be dis-
missed.

### B. Civil Rights Claims under *Bivens*
*2 The United States Court of Appeals for the Dis-
trict of Columbia Circuit instructs that "[c]ourts in
this circuit must examine challenges to personal juris-
diction and **venue** carefully to guard against the
danger that a plaintiff might manufacture **venue** in
the District of Columbia." *Cameron v. Thornburgh,*
983 F.2d 253, 256 (D.C.Cir.1993).

#### 1. Personal Jurisdiction
A District of Columbia court may exercise personal
jurisdiction over a person who is "domiciled in, or-
ganized under the laws of, or maintaining [a] princip-
al place of business in, the District of Columbia as to
any claim for relief." [FN5] D.C.Code § 13-422.
Plaintiff does not allege that any of the individual de-
fendants are domiciled or incorporated in the District
of Columbia, *see id.* ¶¶ 5-6, 8-25 (Part II), and thus
fails to establish that they are persons over whom this
Court may exercise jurisdiction under D.C.Code §
13-422. [FN6] *See Pollack v. Meese,* 737 F.Supp.
663, 665 (D.D.C.1990).

> FN5. With respect to defendant **Wacken-
> hut,** plaintiff alleges that it is a "private, for
> profit corporation maintaining offices at
> 4200 **Wackenhut** Drive, Palm Beach Gar-
> dens, FL." Compl. ¶ 3 (Part II). He does not
> allege that **Wackenhut** is a corporation or-
> ganized under District of Columbia law or
> maintaining a principal place of business in
> the District of Columbia. He does not estab-
> lish personal jurisdiction under D.C.Code §
> 13-422.

> FN6. Plaintiff alleges that defendant Lappin
> is BOP's Director, and that defendant Watts
> maintains an office at BOP's Washington,
> D.C. headquarters. Compl. ¶¶ 4, 7 (Part II).
> Their domiciles, however, are not stated in
> the record.

The Court engages in a two-part inquiry in order to
determine whether it may exercise personal jurisdic-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                  Page 3
Not Reported in F.Supp.2d, 2006 WL 667166 (D.D.C.)
(Cite as: 2006 WL 667166 (D.D.C.))

tion over a non-resident defendant. First, the Court must determine whether jurisdiction may be exercised under the District's long-arm statute. *GTE New Media Services, Inc. v. Bell South Corp.*, 199 F.3d 1343, 1347 (D.C.Cir.2000). Second, the Court must determine whether the exercise of personal jurisdiction satisfies due process requirements. *Id.* (citing *United States v. Ferrara*, 54 F.3d 825, 828 (D.C.Cir.1995)).

Under the District's long-arm statute, a District of Columbia court may exercise personal jurisdiction over a non-resident defendant who either (1) transacts business in the District, (2) causes tortious injury in the District by an act or omission in the District, or (3) causes tortious injury in the District "by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia." [FN7] D.C.Code § 13- 423(a). Plaintiff bears the burden of establishing that personal jurisdiction under the long-arm statute exists "by demonstrating a factual basis for the exercise of such jurisdiction over the defendant." *Novak-Canzeri v. Saud*, 864 F.Supp. 203, 205 (D.D.C.1993) (citing *First Chicago Int'l v. United Exchange Co.*, 836 F.2d 1375, 1378 (D.C.Cir.1988)). Plaintiff does not meet this burden.

> FN7. The District's long-arm statute sets forth alternative bases for long-arm jurisdiction. *See* D.C.Code § 13-423(a). None of these alternatives is relevant in this case.

Although persistent conduct undertaken in a person's individual capacity may constitute the transaction of business for purposes of the long-arm statute, *see* *Pollack v. Meese*, 737 F.Supp. at 666, the complaint sets forth no allegations that these defendants have any personal connection with the District of Columbia. The mere fact that defendants Haro, Ballash, Gonzalez and Brokenshire are employees of the BOP, the headquarters office of which is in the District of Columbia, does not render them subject to suit in their individual capacities in this district. *See* *Stafford v. Briggs*, 444 U.S. 527, 543-45, 100 S.Ct. 774, 63 L.Ed.2d 1 (1980) (absent minimum contacts

other than those arising from federal employment, court may not exercise personal jurisdiction over federal official in his individual capacity). Similarly, the fact that the **Wackenhut** employees at TCI work for a BOP contractor does not suffice.

**\*3** Finally, the complaint alleges no facts to establish that plaintiff suffered any injury in the District of Columbia. The actual injuries of which plaintiff complains occurred in California or, perhaps, Arizona. Regardless of whether these defendants acted within or outside of the District of Columbia, plaintiff suffered no injury here. Accordingly, the Court concludes that it lacks personal jurisdiction over **Wackenhut** or the individual defendants.

**2. Venue**

**Venue** for plaintiff's claims against the individual defendants in their individual capacities is determined under 28 U.S.C. § 1391(b). *See* *Stafford v. Briggs*, 444 U.S. at 544. Where, as here, the Court's jurisdiction is not based solely on diversity of citizenship, **venue** is proper in "(1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred ... or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought." 28 U.S.C. § 1391(b). By this standard, this case properly may proceed in the Eastern District of California, the judicial district where most of the events described in the complaint occurred.

**C. Transfer**

In a case filed in a jurisdiction where **venue** is improper, the Court, in the interest of justice, may transfer the action to any other district where it could have been brought. 28 U.S.C. § 1406(a). The decision to transfer an action on this ground is left to the discretion of the Court. *See* *Novak-Canzeri*, 864 F.Supp. at 207. The Court may transfer an action even though it lacks personal jurisdiction over the defendants. *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 789 (D.C.Cir.1983), *cert. denied*, 467 U.S. 1210, 104 S.Ct. 2399, 81 L.Ed.2d 355 (1984).

Transfer is appropriate under section 1406(a) "when

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2006 WL 667166 (D.D.C.)

**(Cite as: 2006 WL 667166 (D.D.C.))**

Page 4

procedural obstacles [such as lack of personal juris-diction and improper **venue**] impede an expeditious and orderly adjudication on the merits." *Sinclair v. Kleindienst,* 711 F.2d 291, 293-94 (D.C.Cir.1983) (citing *Goldlawr, Inc. v. Heiman,* 369 U.S. 463, 466-67, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962)); *Cren-shaw v. Antokol,* 287 F.Supp.2d 37, 45 (D.D.C.2003). Further, "[i]t is in the interest of justice to transfer the entire complaint rather than have it heard in two dif-ferent **venues."** *In re O'Leska,* No. 00-5339, 2000 WL 1946653 *1 (D.C.Cir. Dec.7, 2000) (per curiam); *Crenshaw v. Antokol,* 287 F.Supp.2d at 45.

In this case, the Court lacks personal jurisdiction over **Wackenhut** and the individual defendants. The al-leged events giving rise to plaintiff's claims occurred principally in California, where **Wackenhut** and BOP conduct business and where many of the indi-vidual defendants likely reside. Although plaintiff's Privacy Act claims may be brought in this district, *see* 5 U.S.C. § 552a(g)(5), judicial economy is served by transferring this civil action in its entirety. There-fore, in the interest of justice, the Court will transfer this action to the United States District Court for the Eastern District of California. An Order consistent with this Memorandum Opinion will be issued separ-ately on this same date.

Not Reported in F.Supp.2d, 2006 WL 667166 (D.D.C.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| FREDERICK HINES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | <u>Case No. 1:07-cv-01664</u> |
| | ) | |
| THE GEO GROUP, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

<u>**ATTACHMENT 2 - FEDERAL JUDICIAL CASELOAD STATISTICS**</u>

# Federal Judicial Caseload Statistics
## March 31, 2006

Office of Judges Programs
Statistics Division
Administrative Office of the United States Courts
Thurgood Marshall Federal Judiciary Building
Washington, D.C. 20544
Telephone: (202) 502-1441
E-Mail: SDInformation@ao.uscourts.gov

Table C-1.
## U.S. District Courts—Civil Cases Commenced, Terminated, and Pending During the 12-Month Period Ending March 31, 2006

| Circuit and District | Total Civil Cases | | | | U.S. Civil Cases | | | | Private Civil Cases | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Pending Mar. 31, 2005 | Commenced | Terminated | Pending Mar. 31, 2006 | Pending Mar. 31, 2005 | Commenced | Terminated | Pending Mar. 31, 2006 | Pending Mar. 31, 2005 | Commenced | Terminated | Pending Mar. 31, 2006 |
| **TOTAL** | 283,209 | 244,068 | 281,220 | 246,057 | 45,408 | 47,298 | 51,290 | 41,416 | 237,801 | 196,770 | 229,930 | 204,641 |
| **DC** | 3,308 | 2,566 | 2,598 | 3,276 | 1,818 | 1,427 | 1,355 | 1,890 | 1,490 | 1,139 | 1,243 | 1,386 |
| **1ST** | 7,453 | 6,139 | 6,539 | 7,053 | 1,291 | 1,438 | 1,431 | 1,298 | 6,162 | 4,701 | 5,108 | 5,755 |
| ME | 354 | 448 | 509 | 293 | 105 | 140 | 160 | 85 | 249 | 308 | 349 | 208 |
| MA | 3,926 | 3,213 | 3,316 | 3,823 | 593 | 633 | 580 | 646 | 3,333 | 2,580 | 2,736 | 3,177 |
| NH | 470 | 490 | 550 | 410 | 83 | 108 | 121 | 70 | 387 | 382 | 429 | 340 |
| RI | 775 | 580 | 540 | 815 | 109 | 145 | 114 | 140 | 666 | 435 | 426 | 675 |
| PR | 1,928 | 1,408 | 1,624 | 1,712 | 401 | 412 | 456 | 357 | 1,527 | 996 | 1,168 | 1,355 |
| **2ND** | 31,830 | 22,422 | 22,080 | 32,172 | 4,159 | 3,489 | 3,660 | 3,988 | 27,671 | 18,933 | 18,420 | 28,184 |
| CT | 2,905 | 2,020 | 2,208 | 2,717 | 321 | 287 | 273 | 335 | 2,584 | 1,733 | 1,935 | 2,382 |
| NY,N | 2,535 | 1,887 | 1,511 | 2,711 | 512 | 419 | 332 | 599 | 2,023 | 1,268 | 1,179 | 2,112 |
| NY,E | 7,542 | 6,126 | 6,203 | 7,465 | 1,409 | 1,051 | 1,278 | 1,182 | 6,133 | 5,075 | 4,925 | 6,283 |
| NY,S | 15,918 | 10,520 | 10,156 | 16,282 | 1,222 | 1,091 | 1,107 | 1,206 | 14,696 | 9,429 | 9,049 | 15,076 |
| NY,W | 2,602 | 1,720 | 1,654 | 2,668 | 603 | 518 | 533 | 588 | 1,999 | 1,202 | 1,121 | 2,080 |
| VT | 328 | 349 | 348 | 329 | 92 | 123 | 137 | 78 | 236 | 226 | 211 | 251 |
| **3RD** | 24,515 | 27,444 | 29,653 | 22,306 | 3,246 | 3,657 | 4,099 | 2,804 | 21,269 | 23,787 | 25,554 | 19,502 |
| DE | 1,733 | 1,067 | 1,367 | 1,433 | 148 | 103 | 89 | 162 | 1,585 | 964 | 1,278 | 1,271 |
| NJ | 6,187 | 6,103 | 6,478 | 5,812 | 1,058 | 1,024 | 1,197 | 885 | 5,129 | 5,079 | 5,281 | 4,927 |
| PA,E | 10,635 | 14,439 | 15,604 | 9,470 | 690 | 947 | 1,054 | 583 | 9,945 | 13,492 | 14,550 | 8,887 |
| PA,M | 2,172 | 2,819 | 2,957 | 2,034 | 569 | 877 | 1,000 | 446 | 1,603 | 1,942 | 1,957 | 1,588 |
| PA,W | 2,742 | 2,633 | 2,959 | 2,416 | 618 | 623 | 717 | 524 | 2,124 | 2,010 | 2,242 | 1,892 |
| VI | 1,046 | 383 | 288 | 1,141 | 163 | 83 | 42 | 204 | 883 | 300 | 246 | 937 |
| **4TH** | 34,475 | 18,241 | 38,280 | 14,436 | 4,029 | 4,633 | 4,970 | 3,692 | 30,446 | 13,608 | 33,310 | 10,744 |
| MD | 3,062 | 3,532 | 3,652 | 2,942 | 638 | 882 | 875 | 645 | 2,424 | 2,650 | 2,777 | 2,297 |
| NC,E | 1,472 | 1,317 | 1,398 | 1,391 | 534 | 555 | 569 | 520 | 938 | 762 | 829 | 871 |
| NC,M | 1,088 | 1,201 | 1,277 | 1,012 | 325 | 425 | 426 | 324 | 763 | 776 | 851 | 688 |
| NC,W | 1,134 | 1,004 | 1,082 | 1,056 | 240 | 259 | 286 | 213 | 894 | 745 | 796 | 843 |
| SC | 22,504 | 3,768 | 23,072 | 3,200 | 774 | 851 | 920 | 705 | 21,730 | 2,917 | 22,152 | 2,495 |
| VA,E | 2,224 | 3,950 | 4,149 | 2,025 | 313 | 621 | 638 | 296 | 1,911 | 3,329 | 3,511 | 1,729 |
| VA,W | 909 | 1,382 | 1,498 | 793 | 319 | 492 | 561 | 250 | 590 | 890 | 937 | 543 |
| WV,N | 686 | 643 | 609 | 720 | 327 | 238 | 260 | 305 | 359 | 405 | 349 | 415 |
| WV,S | 1,396 | 1,444 | 1,543 | 1,297 | 559 | 310 | 435 | 434 | 837 | 1,134 | 1,108 | 863 |

39

## Table C-1. (March 31, 2006—Continued)

| Circuit and District | Total Civil Cases | | | | U.S. Civil Cases | | | | Private Civil Cases | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Pending Mar. 31, 2005 | Commenced | Terminated | Pending Mar. 31, 2006 | Pending Mar. 31, 2005 | Commenced | Terminated | Pending Mar. 31, 2006 | Pending Mar. 31, 2005 | Commenced | Terminated | Pending Mar. 31, 2006 |
| **5TH** | **33,227** | **34,622** | **31,296** | **36,553** | **4,682** | **5,856** | **6,103** | **4,435** | **28,545** | **28,766** | **25,193** | **32,118** |
| LA,E | 3,411 | 7,302 | 2,675 | 8,038 | 273 | 235 | 274 | 234 | 3,138 | 7,067 | 2,401 | 7,804 |
| LA,M | 8,799 | 1,504 | 1,510 | 8,793 | 84 | 80 | 78 | 86 | 8,715 | 1,424 | 1,432 | 8,707 |
| LA,W | 2,510 | 2,351 | 2,579 | 2,282 | 624 | 697 | 740 | 581 | 1,886 | 1,654 | 1,839 | 1,701 |
| MS,N | 1,494 | 1,182 | 1,170 | 1,506 | 113 | 102 | 101 | 114 | 1,381 | 1,080 | 1,069 | 1,392 |
| MS,S | 2,848 | 4,398 | 4,445 | 2,801 | 283 | 171 | 197 | 257 | 2,565 | 4,227 | 4,248 | 2,544 |
| TX,N | 3,581 | 4,577 | 4,761 | 3,397 | 644 | 891 | 893 | 642 | 2,937 | 3,686 | 3,868 | 2,755 |
| TX,E | 2,499 | 2,971 | 3,072 | 2,398 | 527 | 589 | 619 | 497 | 1,972 | 2,382 | 2,453 | 1,901 |
| TX,S | 5,392 | 6,912 | 7,424 | 4,880 | 1,379 | 2,014 | 2,118 | 1,275 | 4,013 | 4,898 | 5,306 | 3,605 |
| TX,W | 2,693 | 3,425 | 3,660 | 2,458 | 755 | 1,077 | 1,083 | 749 | 1,938 | 2,348 | 2,577 | 1,709 |
| **6TH** | **39,599** | **22,556** | **37,672** | **24,483** | **4,032** | **4,545** | **4,881** | **3,776** | **35,567** | **18,011** | **32,871** | **20,707** |
| KY,E | 1,787 | 2,188 | 2,327 | 1,648 | 837 | 1,150 | 1,231 | 756 | 950 | 1,038 | 1,096 | 892 |
| KY,W | 1,382 | 1,510 | 1,506 | 1,386 | 301 | 321 | 343 | 279 | 1,081 | 1,189 | 1,163 | 1,107 |
| MI,E | 19,397 | 5,642 | 20,101 | 4,938 | 748 | 1,013 | 1,069 | 692 | 18,649 | 4,629 | 19,032 | 4,246 |
| MI,W | 1,245 | 1,537 | 1,561 | 1,221 | 207 | 234 | 267 | 174 | 1,038 | 1,303 | 1,294 | 1,047 |
| OH,N | 7,757 | 5,176 | 4,805 | 8,128 | 407 | 599 | 542 | 464 | 7,350 | 4,577 | 4,263 | 7,664 |
| OH,S | 3,231 | 2,402 | 2,753 | 2,880 | 564 | 483 | 507 | 540 | 2,867 | 1,919 | 2,246 | 2,340 |
| TN,E | 1,817 | 1,334 | 1,661 | 1,490 | 385 | 270 | 371 | 284 | 1,432 | 1,064 | 1,290 | 1,206 |
| TN,M | 1,423 | 1,446 | 1,646 | 1,223 | 270 | 233 | 253 | 250 | 1,153 | 1,213 | 1,393 | 973 |
| TN,W | 1,560 | 1,321 | 1,312 | 1,569 | 313 | 242 | 218 | 337 | 1,247 | 1,079 | 1,094 | 1,232 |
| **7TH** | **14,940** | **16,811** | **17,044** | **14,707** | **2,128** | **2,659** | **2,752** | **2,035** | **12,812** | **14,152** | **14,292** | **12,672** |
| IL,N | 6,785 | 7,608 | 7,739 | 6,654 | 902 | 1,008 | 1,032 | 878 | 5,883 | 6,600 | 6,707 | 5,776 |
| IL,C | 992 | 1,076 | 1,093 | 975 | 138 | 232 | 196 | 174 | 854 | 844 | 897 | 801 |
| IL,S | 1,243 | 1,254 | 1,185 | 1,312 | 291 | 246 | 287 | 250 | 952 | 1,008 | 898 | 1,062 |
| IN,N | 1,676 | 1,885 | 1,941 | 1,620 | 214 | 288 | 313 | 189 | 1,462 | 1,597 | 1,628 | 1,431 |
| IN,S | 2,619 | 2,802 | 2,938 | 2,483 | 340 | 528 | 528 | 340 | 2,279 | 2,274 | 2,410 | 2,143 |
| WI,E | 1,344 | 1,428 | 1,358 | 1,414 | 181 | 192 | 226 | 147 | 1,163 | 1,236 | 1,132 | 1,267 |
| WI,W | 281 | 758 | 790 | 249 | 62 | 165 | 170 | 57 | 219 | 593 | 620 | 192 |
| **8TH** | **18,646** | **15,982** | **16,189** | **18,439** | **3,053** | **3,454** | **3,836** | **2,671** | **15,593** | **12,528** | **12,353** | **15,768** |
| AR,E | 3,515 | 2,954 | 2,508 | 3,961 | 562 | 626 | 722 | 466 | 2,953 | 2,328 | 1,786 | 3,495 |
| AR,W | 900 | 753 | 991 | 662 | 369 | 252 | 393 | 228 | 531 | 501 | 598 | 434 |
| IA,N | 599 | 569 | 598 | 570 | 224 | 229 | 217 | 236 | 375 | 340 | 381 | 334 |
| IA,S | 973 | 868 | 1,001 | 840 | 236 | 276 | 304 | 208 | 737 | 592 | 697 | 632 |
| MN | 7,288 | 3,676 | 4,122 | 6,842 | 279 | 376 | 361 | 294 | 7,009 | 3,300 | 3,761 | 6,548 |
| MO,E | 1,960 | 2,810 | 2,598 | 2,172 | 370 | 466 | 462 | 374 | 1,590 | 2,344 | 2,136 | 1,798 |
| MO,W | 1,923 | 2,597 | 2,682 | 1,838 | 629 | 740 | 838 | 531 | 1,294 | 1,857 | 1,844 | 1,307 |
| NE | 809 | 1,109 | 990 | 928 | 167 | 267 | 275 | 159 | 642 | 842 | 715 | 769 |
| ND | 249 | 230 | 239 | 240 | 81 | 89 | 97 | 73 | 168 | 141 | 142 | 167 |
| SD | 430 | 416 | 460 | 386 | 136 | 133 | 167 | 102 | 294 | 283 | 293 | 284 |

# Table C-1. (March 31, 2006—Continued)

| Circuit and District | Total Civil Cases | | | | U.S. Civil Cases | | | | Private Civil Cases | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Pending Mar. 31, 2005 | Commenced | Terminated | Pending Mar. 31, 2006 | Pending Mar. 31, 2005 | Commenced | Terminated | Pending Mar. 31, 2006 | Pending Mar. 31, 2005 | Commenced | Terminated | Pending Mar. 31, 2006 |
| **9TH** | 41,732 | 41,630 | 40,977 | 41,785 | 8,701 | 8,581 | 9,479 | 7,803 | 33,031 | 32,449 | 31,498 | 33,982 |
| AK | 373 | 367 | 338 | 402 | 154 | 121 | 129 | 146 | 219 | 246 | 209 | 256 |
| AZ | 4,292 | 5,006 | 4,343 | 4,955 | 868 | 866 | 930 | 804 | 3,424 | 4,140 | 3,413 | 4,151 |
| CA,N | 6,051 | 6,624 | 5,897 | 6,678 | 779 | 799 | 860 | 718 | 5,272 | 5,825 | 5,137 | 5,960 |
| CA,E | 5,465 | 4,197 | 3,897 | 5,765 | 1,069 | 748 | 804 | 1,013 | 4,396 | 3,449 | 3,093 | 4,752 |
| CA,C | 11,594 | 11,585 | 12,530 | 10,649 | 2,802 | 2,931 | 3,326 | 2,407 | 8,792 | 8,654 | 9,204 | 8,242 |
| CA,S | 2,017 | 2,646 | 2,668 | 1,995 | 554 | 582 | 712 | 424 | 1,463 | 2,064 | 1,956 | 1,571 |
| HI | 755 | 785 | 767 | 773 | 138 | 143 | 152 | 129 | 617 | 642 | 615 | 644 |
| ID | 692 | 567 | 582 | 677 | 178 | 138 | 146 | 170 | 514 | 429 | 436 | 507 |
| MT | 836 | 630 | 591 | 875 | 224 | 189 | 161 | 252 | 612 | 441 | 430 | 623 |
| NV | 2,464 | 2,232 | 2,149 | 2,547 | 351 | 312 | 318 | 345 | 2,113 | 1,920 | 1,831 | 2,202 |
| OR | 2,457 | 2,572 | 2,611 | 2,418 | 752 | 793 | 803 | 742 | 1,705 | 1,779 | 1,808 | 1,676 |
| WA,E | 635 | 736 | 777 | 594 | 243 | 291 | 341 | 193 | 392 | 445 | 436 | 401 |
| WA,W | 3,968 | 2,997 | 3,613 | 3,352 | 543 | 638 | 746 | 435 | 3,425 | 2,359 | 2,867 | 2,917 |
| GUAM | 81 | 39 | 80 | 40 | 37 | 18 | 41 | 14 | 44 | 21 | 39 | 26 |
| NMI | 52 | 47 | 34 | 65 | 9 | 12 | 10 | 11 | 43 | 35 | 24 | 54 |
| **10TH** | 9,847 | 10,089 | 10,812 | 9,124 | 2,297 | 2,396 | 2,598 | 2,095 | 7,550 | 7,693 | 8,214 | 7,029 |
| CO | 2,281 | 2,766 | 2,887 | 2,160 | 378 | 396 | 439 | 335 | 1,903 | 2,370 | 2,448 | 1,825 |
| KS | 1,535 | 1,537 | 1,598 | 1,474 | 359 | 457 | 451 | 365 | 1,176 | 1,080 | 1,147 | 1,109 |
| NM | 1,353 | 1,300 | 1,439 | 1,214 | 368 | 394 | 452 | 310 | 985 | 906 | 987 | 904 |
| OK,N | 1,036 | 779 | 929 | 886 | 221 | 170 | 216 | 175 | 815 | 609 | 713 | 711 |
| OK,E | 530 | 541 | 567 | 504 | 176 | 224 | 177 | 223 | 354 | 317 | 390 | 281 |
| OK,W | 1,294 | 1,576 | 1,713 | 1,157 | 336 | 350 | 424 | 262 | 958 | 1,226 | 1,289 | 895 |
| UT | 1,449 | 1,275 | 1,346 | 1,378 | 344 | 338 | 351 | 331 | 1,105 | 937 | 995 | 1,047 |
| WY | 369 | 315 | 333 | 351 | 115 | 67 | 88 | 94 | 254 | 248 | 245 | 257 |
| **11TH** | 23,637 | 26,166 | 28,080 | 21,723 | 5,972 | 5,163 | 6,206 | 4,929 | 17,665 | 21,003 | 21,874 | 16,794 |
| AL,M | 2,965 | 2,766 | 3,186 | 2,545 | 536 | 535 | 521 | 550 | 2,429 | 2,231 | 2,665 | 1,995 |
| AL,N | 1,227 | 1,274 | 1,244 | 1,257 | 226 | 197 | 191 | 232 | 1,001 | 1,077 | 1,053 | 1,025 |
| AL,S | 712 | 772 | 778 | 706 | 177 | 161 | 170 | 168 | 535 | 611 | 608 | 538 |
| FL,N | 1,305 | 1,498 | 1,540 | 1,263 | 422 | 368 | 443 | 347 | 883 | 1,130 | 1,097 | 916 |
| FL,M | 5,352 | 6,692 | 6,796 | 5,248 | 1,394 | 1,412 | 1,666 | 1,140 | 3,958 | 5,280 | 5,130 | 4,108 |
| FL,S | 6,397 | 6,829 | 7,528 | 5,698 | 2,200 | 1,378 | 1,934 | 1,644 | 4,197 | 5,451 | 5,594 | 4,054 |
| GA,N | 3,681 | 3,984 | 4,615 | 3,050 | 605 | 632 | 743 | 494 | 3,076 | 3,352 | 3,872 | 2,556 |
| GA,M | 1,034 | 1,194 | 1,168 | 1,060 | 233 | 288 | 295 | 226 | 801 | 906 | 873 | 834 |
| GA,S | 964 | 1,157 | 1,225 | 896 | 179 | 192 | 243 | 128 | 785 | 965 | 982 | 768 |

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FREDERICK HINES,                              )
                                             )
                    Plaintiff,               )
                                             )
v.                                           )          **ORDER**
                                             )
THE GEO GROUP, INC., *et al.*,               )
                                             )
                    Defendants.              )
                                             )

_____

UPON CONSIDERATION of the Motion to Dismiss filed by Defendant GEO Group,

Inc., any opposition thereto, and the entire record herein, and the Court having concluded that

good cause has been shown; it is hereby

ORDERED that the Motion to Dismiss is GRANTED.


Date: _____

                              _____
                              The Honorable John D. Bates
                              United States District Judge


Copies to:

Deborah J. Israel, Esq.
Womble Carlyle Sandridge & Rice, PLLC
1401 Eye Street, NW, 7th Floor
Washington, DC  20005
*Counsel for Defendant GEO Group, Inc.*

Frederick Hines
#33592-007
Rivers Correctional Institution
145 Parker's Fishery Road
Winton, NC  27986
*Pro Se Plaintiff*