# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FREDERICK HINES,<br><br>        Plaintiff (Pro Se),<br><br>    v.<br><br>GEO GROUP, INC.; UNITED STATES OF AMERICA, through its department, the FEDERAL BUREAU OF PRISONS; and HARLEY LAPPIN, in his official capacity as Director of the FEDERAL BUREAU OF PRISONS,<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)      Civil Action No. 07-1664 (JDB) |

## FEDERAL DEFENDANTS' MOTION TO DISMISS
## OR, IN THE ALTERNATIVE, TO TRANSFER

Defendants the Federal Bureau of Prisons ("BOP") and Harley Lappin in his official capacity as BOP Director ("federal defendants") hereby move the Court pursuant to Federal Rules of Civil Procedure 12(b)(1) and (b)(6) to dismiss all claims against federal defendants in the above-captioned action, or in the alternative, to transfer this action to the Eastern District of North Carolina, for the reasons set forth in the accompanying Memorandum in support of this motion.

Dated: December 10, 2007

Respectfully submitted,
JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General
JEFFREY A. TAYLOR
United States Attorney
VINCENT M. GARVEY
Deputy Branch Director

/s/ Kathryn L. Wyer
KATHRYN L. WYER
U.S. Department of Justice, Civil Division
20 Massachusetts Ave. NW, Room 7218
Washington, D.C.  20001
Telephone: (202) 616-8475 / Fax: (202) 616-8202
kathryn.wyer@usdoj.gov
*Attorneys for Federal Defendant*s

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FREDERICK HINES, | ) |
| | ) |
| Plaintiff (Pro Se), | ) |
| | ) |
| v. | ) Civil Action No. 07-1664 (JDB) |
| | ) |
| GEO GROUP, INC.; UNITED STATES OF | ) |
| AMERICA, through its department, the FEDERAL | ) |
| BUREAU OF PRISONS; and HARLEY LAPPIN, | ) |
| in his official capacity as Director of the | ) |
| FEDERAL BUREAU OF PRISONS, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## MEMORANDUM IN SUPPORT OF FEDERAL DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER

# TABLE OF CONTENTS

**PAGE(S)**

TABLE OF AUTHORITIES ....................................................................................................... iv

INTRODUCTION ....................................................................................................................... 1

BACKGROUND ......................................................................................................................... 3

STANDARD OF REVIEW ......................................................................................................... 6

ARGUMENT .............................................................................................................................. 8

I.  PLAINTIFF HAS NO CLAIM OF DISABILITY DISCRIMINATION AGAINST
    FEDERAL DEFENDANTS .............................................................................................. 8

    A.  Plaintiff Cannot Assert An ADA Claim Against The Federal Government ............. 8

    B.  Any Rehabilitation Act Claim Against Federal Defendants Would Be Futile
        Because Federal Defendants Neither Provide "Financial Assistance" To
        Rivers Nor Conduct Any Program Or Activity In Which The Alleged
        Discrimination Occurred ........................................................................................... 9

    C.  Plaintiff Fails To Allege Facts That Indicate Discrimination Solely By
        Reason Of Disability ............................................................................................... 12

II.  PLAINTIFF HAS NO EIGHTH AMENDMENT CLAIM AGAINST
     FEDERAL DEFENDANTS ........................................................................................... 14

    A.  The BOP, Through Its Contract With GEO Group, Does Not Exert
        "Supervision And Control" Over Rivers  Operations Sufficient To Subject
        The BOP To FTCA Liability .................................................................................... 14

    B.  Plaintiff's Failure To Cite A BOP Policy Or Custom Allegedly Responsible
        For The Eighth Amendment Violations He Asserts Is Fatal To His Claim
        Against Federal Defendants .................................................................................... 17

III. PLAINTIFF HAS NO DAMAGES CLAIM AGAINST FEDERAL
     DEFENDANTS .............................................................................................................. 19

IV.  IN THE ALTERNATIVE, THIS ACTION SHOULD BE TRANSFERRED
     TO THE EASTERN DISTRICT OF NORTH CAROLINA ................................................ 22

CONCLUSION ............................................................................................................ 24

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

Alexander v. Choate, 469 U.S. 287 (1985) ...................................................................13

Allison v. Howard Univ., 209 F. Supp. 2d 55 (D.D.C. 2002) ........................................12

Arawole v. Hemingway, No. 04-506, 2005 WL 1630013 (N.D. Tex. Jul. 7, 2005) .......................8

*Baker v. Dist. of Columbia, 326 F.3d 1302 (D.C. Cir. 2003) .....................................17

*Beaird v. Gonzales, 495 F. Supp. 2d 81 (D.D.C. 2007) ...............................................8

Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955 (2007) ................................................7

Bryant v. Madigan, 84 F.3d 246 (7th Cir. 1996) ..........................................................13

Cannon v. United States, 645 F.2d 1128 (D.C. Cir. 1981) ...........................................16

Cercpac v. Health & Hosp. Corp., 147 F.3d 165 (2d Cir. 1998) ..................................13

*City of Canton v. Harris, 489 U.S. 378 (1989) ......................................................17, 18

Clark v. Library of Congress, 750 F.2d 89 (D.C. Cir. 1984) ........................................14

Commonwealth of Va. v. Reno, 955 F. Supp. 571 (E.D. Va. 1997) .................................3

Cuco v. Fed. Med. Ctr.-Lexington, No. 05-232, 2006 WL 1635668 (E.D. Ky. Jun. 9, 2006) .......13

Curry v. Alexandre, No. 05-1873, 2006 WL 2547062 (W.D. La. Jun. 19, 2006) .............8

Dage v. Leavitt, No. 04-0221, 2007 WL 81961 (D.D.C. Jan. 9, 2007) ...........................13

Dep't of Army v. Blue Fox, Inc., 525 U.S. 255 (1999) ...................................................19

DeVargas v. Mason & Hanger-Silas Mason Co., 911 F.2d 1377 (10th Cir. 1990) .......................11

*Dorsey v. United States Dep't of Labor, 41 F.3d 1551 (D.C. Cir. 1994) ...............20, 21

EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621 (D.C. Cir. 1997) ..................7

*FDIC v. Meyer, 510 U.S. 471 (1994) ...................................................15, 19, 20, 21

Foreman v. Bureau of Prisons, No. 04-5413, 2005 WL 3500807 (D.N.J. Dec. 10, 2005) .............8

Giacobbi v. Bierman, 780 F. Supp. 33 (D.D.C. 1992) ...................................................10

Huskey v. Quinlan, 785 F. Supp. 4 (D.D.C. 1992) .........................................................24

Ibrahim v. Dist. of Columbia, 463 F.3d 3 (D.C. Cir. 2006) ........................................8

In re Scott, 709 F.2d 717 (D.C. Cir. 1983) ...................................................................23

Isenbarger v. Farmer, 463 F. Supp. 2d 13 (D.D.C. 2006) ..........................................7

Joyner v. Dist. of Columbia, 267 F. Supp. 2d 15 (D.D.C. 2003) .......................................24

Kemer v. Johnson, 900 F. Supp. 677 (S.D.N.Y. 1995) ......................................................9

*Lane v. Pena, 518 U.S. 187 (1996) .....................................................................20, 21

Lentz v. Eli Lilly & Co., 464 F. Supp. 2d 35 (D.D.C. 2006) .......................................23

Leskinen v. Utz Quality Foods, Inc., 30 F. Supp. 2d 530 (D. Md. 1998) .....................................10

Logue v. United States, 412 U.S. 521 (1973) ................................................................16

*Macharia v. United States, 238 F. Supp. 2d 13 (D.D.C. 2002) ...................................14, 16

McNally v. Prison Health Servs., 46 F. Supp. 2d 49 (D. Me.1999) ...............................................13

Nolley v. County of Erie, 776 F. Supp. 715 (W.D.N.Y. 1991) ......................................................11

Olmstead v. L.C. by Zimring, 527 U.S. 581 (1999) .........................................................13

Phillips v. Fed. Bur. of Prisons, 271 F. Supp. 2d 97 (D.D.C. 2003) ..............................................16

Piper Aircraft, Co. v. Reyno, 454 U.S. 235 (1981) ........................................................23

Rashad v. Doughty, No. 00-6088, 2001 WL 68708 (10th Cir. 2001) ...........................................13

Rogers v. Fed. Bur. of Prisons, 257 F. Supp. 2d 147 (D.D.C. 2003) .................................................24

Rogers v. Johnson-Norman, 466 F. Supp. 2d 162 (D.D.C. 2006) ................................................4, 7

Role Models America, Inc. v. Harvey, 459 F. Supp. 2d 28 (D.D.C. 2006) ......................................7

Rosales v. United States, 477 F. Supp. 2d 213 (D.D.C. 2007) ........................................22

Settles v. U.S. Parole Comm'n, 429 F.3d 1098 (D.C. Cir. 2005) ....................................9

Shirk v. Garrow, 505 F. Supp. 2d 169 (D.D.C. 2007) ..................................................7, 8

Simpson v. Reynolds Metals Co., 629 F.2d 1226 (7th Cir. 1980) ..................................10

Skinner v. United States, No. 05-2237, 2007 WL 744737 (D.D.C. Mar. 6, 2007) .......................24

Smart v. Good, 21 F. Supp. 2d 309 (S.D.N.Y. 1998) ....................................................23

*Starnes v. McGuire, 512 F.2d 918 (D.C. Cir. 1974) (en banc) .........................................22, 23, 24

Stern v. Fed. Bur. of Prisons, No. 07-00564, 2007 WL 1555830 (D.D.C. Mar. 22, 2007) ...........23

Tri-State Hosp. Supply Corp. v. United States, 341 F.3d 571 (D.C. Cir. 2003) ...........................19

United States v. Orleans, 425 U.S. 807 (1976) ..........................................................16

United States v. Sherwood, 312 U.S. 584 (1941) ......................................................19

Warren v. Dist. of Columbia, 353 F.3d 36 (D.C. Cir. 2004) ...........................................9

Young v. Director, Bur. of Prisons, 367 F.2d 331 (D.C. Cir. 1966) ..................................22

Zakiya v. United States, 267 F. Supp. 2d 47 (D.D.C. 2003) ...............................14, 20, 24

## STATUTES

Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346 .................................................. 14

28 U.S.C. § 1391 ........................................................................................22

28 U.S.C. § 1404(a) ....................................................................................22

29 U.S.C. § 793 ........................................................................................10

Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 ...................................1, 9, 12, 20

29 U.S.C. § 794a .......................................................................................21

Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12300 ................................1, 6, 8

42 U.S.C. §§ 12111-12112 ..................................................................................................8

42 U.S.C. §§ 12131-12132 ..................................................................................................8

42 U.S.C. §§ 12181-12182 ..................................................................................................8

D.C. Code § 24-101 .......................................................................................................3, 4

National Capital Revitalization and Self-Government Improvement Act ("Revitalization Act"),
    Pub. L. No. 105-33, § 11201, 111 Stat. 712, 734-37 (1997) ...............................................3

## LEGISLATIVE MATERIALS

143 Cong. Rec. S8386-02, S8388 (daily ed. July 31, 1997) (statement of Sen. Hatch) ..................3

## ADMINISTRATIVE REGULATIONS

28 C.F.R. § 39.130 .......................................................................................................12

28 C.F.R. § 41.3 .......................................................................................................11-12

 Federal Acquisition Regulation, 48 C.F.R. Ch. 1 11

INTRODUCTION

This action concerns the claims of a pro se plaintiff currently incarcerated at Rivers

Correctional Institution ("Rivers"), a private facility operated by GEO Group, Inc. ("GEO

Group" or "GEO"), which houses D.C. felony offenders pursuant to a contract between GEO

Group and the Federal Bureau of Prisons ("BOP").  In this action, plaintiff alleges he has

received inadequate medical care at Rivers in violation of the Eighth Amendment and has been

discriminated against on the basis of disability in violation of the Americans with Disabilities Act

("ADA"), 42 U.S.C. §§ 12101-12300.  Plaintiff names as defendants GEO Group, the BOP, and

Harley Lappin in his official capacity as BOP Director.  Plaintiff seeks damages as well as

declaratory and injunctive relief although his damages claim appears to be asserted against GEO

Group alone.

All of plaintiff's claims against the BOP and Harley Lappin (collectively, "federal

defendants" or "BOP") should be dismissed.  The ADA does not apply to the federal

government.  While Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a), does allow suit

against federal agencies for disability-based discrimination in some circumstances, where the

agency has provided "financial assistance" to or is itself conducting the program or activity in

which the discrimination allegedly occurred, here no viable Rehabilitation Act claim can be

construed.  The BOP does not provide "financial assistance" to Rivers within the meaning of

Section 504 of the Rehabilitation Act because the procurement contract between it and GEO

Group provides for the exchange of payment for services, not for a federal subsidy designed to

benefit ultimate program or activity participants.  In addition, the BOP does not itself conduct

any program or activity at Rivers, nor has plaintiff alleged any involvement by BOP employees in

the discriminatory conduct.  Indeed, plaintiff does not adequately identify any discrimination that

he was subjected to "solely by reason of his disability," which is what a Rehabilitation Act claim

would require.  Rather, plaintiff seeks medical treatment for various illnesses and injuries, some

of which he claims have resulted in or are caused by his disability.  The Rehabilitation Act is not

the proper vehicle for bringing such claims.

Plaintiff's Eighth Amendment claim against federal defendants must also be dismissed

for failure to state a claim.  Plaintiff does not assert any basis for holding the BOP responsible for

the actions or omissions of GEO Group under any recognized legal framework.  Congress has

required the BOP to house at least fifty percent of D.C. felony offenders in private prisons.  In

order to fulfill this statutory mandate, the BOP entered into a contract with GEO Group that sets

forth in detail GEO Group's obligations with respect to, among other things, the provision of

medical care to inmates.  Because GEO Group is an independent contractor, the BOP is simply

not in a position to micromanage day-to-day operations at Rivers, and plaintiffs cite no legal

authority that would place such an obligation on the BOP.  Even if GEO Group were considered

an agent of the BOP,  plaintiff points to no BOP policy or custom that could plausibly be viewed

as causing Rivers employees to violate the Eighth Amendment.  To the contrary, plaintiff merely

quotes those contractual provisions that obligate Rivers to provide adequate medical care.

To the extent plaintiff does seek damages from federal defendants, these claims must also

be dismissed because they are barred by sovereign immunity.  There is no law that provides for

damages claims against federal agencies based on alleged constitutional violations.  Similarly,

even if plaintiff's Complaint is construed as asserting a Section 504 Rehabilitation Act claim

against federal defendants, that Act contains no waiver of sovereign immunity for damages

-2-

claims against the federal government.

This Court should therefore dismiss all claims against federal defendants.  In the alternative, this Court should transfer this case to the Eastern District of North Carolina, where the incidents giving rise to plaintiff's lawsuit took place, and where the relevant witnesses – including plaintiff himself, who is currently incarcerated – and records are located.

## BACKGROUND

In 1997, as part of the National Capital Revitalization and Self-Government Improvement Act ("Revitalization Act"), Pub. L. No. 105-33, § 11201, 111 Stat. 712, 734-37, Congress decided to overhaul the District of Columbia ("D.C.")'s criminal justice system, which one senator referred to as "broken."  See 143 Cong. Rec. S8386-02, S8388 (daily ed. July 31, 1997) (statement of Sen. Hatch).  A primary goal of the Revitalization Act was to close D.C.'s Lorton Correctional Complex, whose facilities had been deemed in a 1996 congressional study to be in a "deplorable" condition.  See 111 Stat. at 734 (providing that Lorton would be closed no later than December 31, 2001); Commonwealth of Va. v. Reno, 955 F. Supp. 571, 575 & n.10 (E.D. Va. 1997) (describing the history of Lorton and citing the 1996 congressional study, together with numerous newspaper articles chronicling such problems as "inmate escapes, official corruption, and drug smuggling" at the institution).  The Act amended D.C. Code § 24-101 to provide that the federal government, rather than D.C., would henceforth be responsible for coordinating the imprisonment of individuals convicted of felonies under the D.C. Code.  Specifically, the BOP was given the responsibility of "designat[ing]" such individuals "to a penal or correctional facility operated or contracted for by the [BOP], for such term of imprisonment as the court may direct."  D.C. Code § 24-101(a).  Congress further required that, by September 30, 2003, the

BOP house "[a]t least 50 percent of the D.C. sentenced felony population" in "private contract

facilities." Id. § 24-101(c)(1)(B). This provision was meant to address the fact that operations

costs had made the D.C. corrections system "among the most expensive in the country." S. Rep.

No. 106-409, at 20 (2000) (reporting, however, that anticipated savings from the use of contract

facilities had not been realized during the previous three years).

    Pursuant to its obligation under this statutory provision, the BOP initiated a competitive

bidding process by issuing a Request for Proposals, and entered into a contract with GEO Group,

Inc. ("GEO Group"), in 2000 to house D.C. Code felony offenders at Rivers Correctional

Institution ("Rivers"), in Winton, North Carolina. Compl. ¶¶ 30-31. The terms of this contract

require that, before receiving a Notice to Proceed from the BOP, GEO Group would have to

develop plans, policies, and procedures that comply with the standards set forth by the private

nonprofit American Correctional Association ("ACA"), and submit them to the BOP for review

and concurrence. Statement of Work, at 5-6.[1] GEO Group was also required to obtain ACA

accreditation. Id. at 7. The contract also states that "[a]ll services and programs" that GEO

Group provides at Rivers "shall comply with the [Statement of Work]; the U.S. Constitution; all

applicable Federal, state and local laws and regulations; applicable Presidential Executive Orders

---

[1]The contract between the BOP and GEO Group is comprised of a Contract Award form
setting forth the specific financial terms of the contract, together with a Statement of Work,
setting forth GEO Group's general obligations under the contract. Plaintiff has submitted a copy
of the contract as Exhibit C attached to his memorandum in opposition to GEO Group's motion
to dismiss. Based on plaintiff's quotation and citation of the contract in his Complaint, ¶ 14, his
evident reliance on the terms of the contract for his claims, and his attachment of an excerpt from
the contract to his Complaint, the contract is "incorporated in the complaint," and the Court may
therefore consider the contract without converting federal defendants' motion to dismiss under
Fed. R. Civ. P. 12(b)(6) into a motion for summary judgment. Rogers v. Johnson-Norman, 466
F. Supp. 2d 162, 165 n.3 (D.D.C. 2006) (internal quotation omitted)).

-4-

(E.O.); all applicable case law, consent decrees, and Court Orders." Id. at 6.

The contract specifically requires that Rivers "comply with the requirements of the Architectural Barriers Act of 1968, and the Rehabilitation Act of 1973 as amended." Id. at 23. The Rivers site and building must also meet the federal "standards for institution accessibility by physically handicapped persons," which were included as an attachment to the contract. Id.

In regard to health care, the contract requires GEO Group to "provide all essential health services while meeting the applicable standards and levels of quality established by the ACA and the designated BOP ambulatory health care accreditation provider, JCAHO[2]." Id. at 32-33.  GEO Group is further obligated to "adhere to all applicable Federal, state and local laws and regulations governing the delivery of health services and establish the necessary quality controls to ensure all policies and procedures are designed and implemented in a manner to promote orderly and efficient delivery of health services to the inmate population." Id. at 33.  The contract also requires GEO Group to maintain JCAHO accreditation, and to provide a standard of health care delivery that is "commensurate to the level of care available in the community," in accord with various BOP directives and manuals.  Id.  GEO Group must "furnish prescription eyeglasses to any inmate who requires them." Id. at 36.

On September 20, 2007, plaintiff filed his Complaint in this action.  Plaintiff, a fifty-eight-year-old male, alleges that due to a stroke that he suffered in 2002, prior to his incarceration, he requires physical therapy, specialized treatment from a podiatrist, and orthopedic shoes and that these needs have not been met during his incarceration at Rivers.

---

[2]The JCAHO standards are established by the private nonprofit Joint Commission, formerly the Joint Commission on Accreditation of Healthcare Organizations, a nationally recognized  healthcare accreditation authority.

Compl. ¶¶ 19, 22, 25.  Plaintiff also claims that the physician on duty at Rivers denied

permission for plaintiff to receive a biopsy at an outside hospital in order to diagnose white spots

on his lungs, which he believes to be lung cancer.  Id. ¶ 23.  Plaintiff further alleges that because

the Rivers Health Service Administrator denied plaintiff's request for a wheelchair or physical

therapy, plaintiff has fallen on a number of occasions, suffering various injuries as a result, and

that Rivers medical personnel have refused to provide treatment for these injuries.  Id. ¶ 24.  He

claims that, following his stroke in 2002, his doctor declared him to be disabled, and that he is

therefore entitled to "the benefits of th[e] [Americans with Disabilities Act of 1990, 42 U.S.C. §§

12101 et seq.]"  Compl. ¶¶ 26-27.  Plaintiff also asserts that his alleged failure to receive physical

therapy, treatment for lung cancer, and treatment for other ailments while at Rivers constitutes a

violation of the Eighth Amendment.  Id. ¶ 30.  As a result of these alleged violations, plaintiff

requests "punitive and compensatory damages for injuries suffered from defendant GEO" in the

amount of five million dollars.  Id. at 19.  He also requests declaratory and injunctive relief.  Id.

Codefendant GEO Group filed a motion to dismiss and an alternative motion to transfer

on October 29, 2007.  GEO Group's memorandum in support of its motion to dismiss argued that

this Court lacks personal jurisdiction over GEO Group and that plaintiff's Complaint fails to

state a claim on which relief may be granted.  Plaintiff filed his opposition to that motion on

December 3, 2007.

## STANDARD OF REVIEW

Under Fed. R. Civ. P. 12(b)(1), the court must dismiss any claim over which it lacks

subject matter jurisdiction.  Because federal courts are courts of limited jurisdiction, the law

presumes that any claim lies outside this limited jurisdiction, and "the plaintiff bears the burden

-6-

of establishing that the court has subject-matter jurisdiction." Role Models America, Inc. v. Harvey, 459 F. Supp. 2d 28, 33-34 (D.D.C. 2006). The factual allegations in a plaintiff's complaint "will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim," and material other than these allegations may be considered in determining whether subject matter jurisdiction exists, "so long as [the court] still accepts the factual allegations in the complaint as true." Isenbarger v. Farmer, 463 F. Supp. 2d 13, 18 (D.D.C. 2006).

Under Fed. R. Civ. P. 12(b)(6), the court's decision whether to dismiss for failure to state a claim upon which relief may be granted is based on "the legal sufficiency of the complaint." Shirk v. Garrow, 505 F. Supp. 2d 169, 171 (D.D.C. 2007). While the complaint need not provide "detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007). The alleged facts must "state a claim for relief that is plausible on its face" rather than merely "conceivable." Id. at 1974.

In determining whether dismissal is warranted for failure to state a claim, a court may consider "'the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice.'" Rogers v. Johnson-Norman, 466 F. Supp. 2d 162, 165 n.3 (D.D.C. 2006) (quoting EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997)). "[T]he court must treat the complaint's factual allegations . . . as true and draw all reasonable inferences therefrom in the plaintiff's favor," but "the court need not accept as true inferences unsupported by facts set out in the

-7-

complaint or legal conclusions cast as factual allegations." Shirk, 505 F. Supp. 2d at 172.

## ARGUMENT

I.  **PLAINTIFF HAS NO CLAIM OF DISABILITY DISCRIMINATION AGAINST FEDERAL DEFENDANTS**

### A.    Plaintiff Cannot Assert An ADA Claim Against The Federal Government

Plaintiff asserts a claim of discrimination based on disability under the ADA, 42 U.S.C. §§ 12101-12300.  While various subchapters of the ADA apply to state and local governments and to private entities, the ADA does not apply to the United States or federal agencies.  See id. §§ 12111-12112 (prohibiting discrimination in employment but excluding the United States from definition of "employer"); §§ 12131-12132 (prohibiting discrimination by public entities, defined as state and local governments and their agencies); §§ 12181-12182 (prohibiting discrimination in public accommodations and commercial facilities operated by private entities); see also Beaird v. Gonzales, 495 F. Supp. 2d 81, 83 n.2 (D.D.C. 2007) (noting that plaintiff inmates failed to state an ADA claim against the Bureau of Prisons because the ADA "does not apply to the federal government"); Ibrahim v. Dist. of Columbia, 463 F.3d 3, 5 (D.C. Cir. 2006) (noting district court's dismissal of plaintiff inmate's ADA claims against federal defendants); Foreman v. Bureau of Prisons, No. 04-5413, 2005 WL 3500807, at *10 (D.N.J. Dec. 10, 2005) (dismissing inmate's ADA claim against Bureau of Prisons); Curry v. Alexandre, No. 05-1873, 2006 WL 2547062, at *6 (W.D. La. Jun. 19, 2006) (same); Arawole v. Hemingway, No. 04-506, 2005 WL 1630013, at *2 (N.D. Tex. Jul. 7, 2005) (same).  Plaintiff's ADA claim against federal defendants must therefore be dismissed.

The rule that pro se complaints should be liberally construed does not require a different

result.  "The rule of liberal construction of [pro se] complaints applies to factual allegations."

Settles v. U.S. Parole Comm'n, 429 F.3d 1098, 1106 (D.C. Cir. 2005); cf. Warren v. Dist. of

Columbia, 353 F.3d 36, 37 (D.C. Cir. 2004).  It does not require a court to add an entirely new

statutory cause of action that has not been alleged.  Thus, while federal agencies may in some

circumstances be subject to suit for disability-based discrimination under Section 504 of the

Rehabilitation Act, 29 U.S.C. § 794(a), there is no basis here for importing such a claim into

plaintiff's Complaint, particularly where codefendant GEO Group, Inc. has not contested the

ADA's applicability to it,[3] plaintiff has failed to allege any actions by federal defendants that

could be construed as violating Section 504 of the Rehabilitation Act, and the facility in which

plaintiff is housed, where the "denial of benefits" that plaintiff alleges has presumably occurred,

is run by GEO Group, not by federal defendants.[4]

>    **B.**    **Any Rehabilitation Act Claim Against Federal Defendants Would Be Futile Because Federal Defendants Neither Provide "Financial Assistance" To Rivers Nor Conduct Any Program Or Activity In Which The Alleged Discrimination Occurred**

Should the Court nevertheless construe plaintiff's ADA claim against federal defendants

as a claim under Section 504 of the Rehabilitation Act, that claim should also be dismissed.

Section 504 prohibits discrimination against any "otherwise qualified individual with a

disability" in programs and activities that "receiv[e] Federal financial assistance" or that are

"conducted by any Executive agency."  29 U.S.C. § 794(a).  Plaintiff cannot state a claim against

---

[3] GEO Group has, however, argued that plaintiff's vague allegation of entitlement to unspecified "benefits" fails to state a claim under the ADA.  See GEO Group's Mem. at 6-9.

[4] Scattered decisions in other jurisdictions have construed a pro se plaintiff's ADA claim as a Rehabilitation Act claim.  E.g., Kemer v. Johnson, 900 F. Supp. 677, 681 (S.D.N.Y. 1995).  However, federal defendants have not found any authority for doing so in this jurisdiction.

federal defendants either as a "Federal provider" of financial assistance to Rivers or as an agency that "conduct[s]" the program or activity in which the alleged discrimination has occurred.

The BOP does not provide "financial assistance" to Rivers as that term is used in Section 504 of the Rehabilitation Act.  The BOP has entered into a contract with GEO Group through which GEO Group houses D.C. felony offenders at Rivers in exchange for a specified amount of money.  However, an allegation that an entity has "a contract with the federal government is not equivalent to an allegation that [the entity] received federal financial assistance because the term 'financial assistance' contemplates grants, loans or subsidies without reciprocal services or benefits."  Leskinen v. Utz Quality Foods, Inc., 30 F. Supp. 2d 530, 534 (D. Md. 1998).  In other words, as courts that have considered the issue agree, only federal assistance in the form of outright subsidies, and not a contract involving compensatory payments for services, can render the contracting parties subject to Section 504 Rehabilitation Act claims.  See id. (collecting cases).[5]

For example, under facts strikingly similar to those presented here, one court has held that a county holding center did not receive "Federal financial assistance" through its contract to house federal prisoners, and was therefore not subject to suit under the Rehabilitation Act,

---

[5]Indeed, the Rehabilitation Act addresses the obligations of federal contractors in a different statutory provision, Section 503 of the Act, codified at 29 U.S.C. § 793.  That provision requires those who enter into contracts with the federal government to comply with certain requirements regarding their employment of individuals with disabilities.  Id. § 793(a).  Section 503 provides for administrative enforcement by the Department of Labor ("DOL"), and courts have held this administrative remedy to be the exclusive remedy available for violation of that provision.  See, e.g., Simpson v. Reynolds Metals Co., 629 F.2d 1226, 1244 (7th Cir. 1980) (no private right of action under section 503); Giacobbi v. Bierman, 780 F. Supp. 33, 42 (D.D.C. 1992) (no remedy available for plaintiff challenging promptness of DOL investigation). This structure further demonstrates that Congress regarded entering into a contract as distinct from providing "Federal financial assistance."

because "[p]ayment of fair market value for services rendered does not constitute a subsidy," and plaintiff had offered no evidence that the amount the county received through the contract exceeded market rates. Nolley v. County of Erie, 776 F. Supp. 715, 743 (W.D.N.Y. 1991). Furthermore, in DeVargas v. Mason & Hanger-Silas Mason Co., 911 F.2d 1377, 1382 (10th Cir. 1990), the Tenth Circuit held that a contract with the government, even one with terms favorable to the nongovernment party, does not constitute financial assistance within the meaning of the Act unless the government intended to provide a subsidy. Id. at 1382. The court concluded that the evidence in the case before it did not support such an intent where the government had performed a study showing it would save money through the contract and the contract was awarded through a competitive bidding process. Id. Where the government simply seeks to pay an independent contractor in order to carry out a particular task, and is not thereby attempting to provide assistance over and above simple payment-for-service, the government is not subject to suit under the Rehabilitation Act.

Here, as described above, the contract between the BOP and GEO Group was signed following a competitive bidding process initiated by the BOP's issuance of a Request for Proposals, in response to a statute through which Congress signified its recognition that private correctional facilities provide an economical alternative to government-run institutions. As indicated in the contract, this process, and the contract itself, are subject to the Federal Acquisition Regulation, 48 C.F.R. Ch. 1. See Contract section B, at 2. The contract therefore qualifies as a procurement contract, and plaintiff has failed to allege any facts that could support the claim that this contract provides GEO Group with a subsidy, beyond payment for services. Indeed, procurement contracts are expressly excluded from the definition of "financial

-11-

assistance" that appears in the Rehabilitation Act regulations of the Department of Justice, which governs the BOP.  See 28 C.F.R. § 41.3(e).  Plaintiff therefore cannot state a Section 504 claim against federal defendants as providers of "financial assistance."

Plaintiff also cannot state a claim against federal defendants based on the idea that Rivers or any aspect of Rivers constitutes a "program or activity" that is "conducted by" the BOP. Rivers is operated by GEO Group, a private contractor, and all of the actions that plaintiff describes were actions of GEO Group personnel, not of the BOP.  A DOJ regulation states that an agency may not discriminate on the basis of disability, "directly or through contractual, licensing, or other arrangements," in "providing any aid, benefit, or service."  28 C.F.R. § 39.130(b)(1).  The regulation nowhere indicates, however, that the actions of contractors are to be automatically imputed to the agency.  Plaintiff therefore has no Rehabilitation Act claim against federal defendants.

### C.    Plaintiff Fails To Allege Facts That Indicate Discrimination Solely By Reason Of Disability

A discrimination claim under Section 504 of the Rehabilitation Act must allege discrimination "solely by reason of . . . disability."  29 U.S.C. § 794(a); Allison v. Howard Univ., 209 F. Supp. 2d 55, 63 (D.D.C. 2002).  Here, plaintiff alleges that he has not been treated for lung cancer, chronic chest pains, a pinched nerve, the ongoing effects of a prior stroke, and injuries sustained during a fall, and that he has been denied physical therapy and the care of a podiatrist.  Compl. ¶¶ 24-25.  However serious plaintiff's medical condition may appear from this list of ailments, plaintiff's allegations of inadequate medical care are insufficient to state a Rehabilitation Act claim.

The Rehabilitation Act "do[es] not guarantee any particular level of medical care for disabled persons, nor assure maintenance of service previously provided." Cercpac v. Health & Hosp. Corp., 147 F.3d 165, 168 (2d Cir. 1998). The purpose of the Rehabilitation Act "'is to guarantee that individuals with disabilities receive evenhanded treatment relative to those persons without disabilities.'" Dage v. Leavitt, No. 04-0221, 2007 WL 81961, at *8 (D.D.C. Jan. 9, 2007) (quoting Olmstead v. L.C. by Zimring, 527 U.S. 581, 620 (1999)). The Act requires meaningful access to benefits at whatever level they currently exist; it does not guarantee equal results from these benefits. See Alexander v. Choate, 469 U.S. 287, 299, 301, 304 (1985) (observing that the Rehabilitation Act does not require that "the benefit being offered [be altered] simply to meet the reality that the handicapped have greater medical needs"). Accordingly, it is well established that claims of inadequate medical care or medical malpractice fail as assertions of disability-based discrimination under the Rehabilitation Act.[6] As described above, plaintiff's allegations amount to a claim of inadequate medical care, with no suggestion of discriminatory treatment, and therefore do not suffice to state a Section 504 Rehabilitation Act claim.

---

[6] Numerous courts have recognized this principle in regard to the Rehabilitation Act as well as the ADA. Rashad v. Doughty, No. 00-6088, 2001 WL 68708, at *1 (10th Cir. 2001) (unpublished) (recognizing that "the failure to provide medical treatment to a disabled prisoner, while perhaps raising Eighth Amendment concerns in certain circumstances, does not constitute an ADA violation"); Bryant v. Madigan, 84 F.3d 246, 249 (7th Cir. 1996) (holding that the ADA "would not be violated by a prison's simply failing to attend to the medical needs of its disabled prisoners" and that the statute "does not create a remedy for medical malpractice"); Cuco v. Fed. Med. Ctr.-Lexington, No. 05-232, 2006 WL 1635668, at *43 (E.D. Ky. Jun. 9, 2006) (unpublished) (holding plaintiff failed to state a Rehabilitation Act claim where her claim of exclusion from medical services failed to establish a "demonstrable nexus between the plaintiff's disability and the exclusion complained of"); McNally v. Prison Health Servs., 46 F. Supp. 2d 49, 58 (D. Me.1999) (recognizing the distinction between "claims that the medical treatment received for a disability was inadequate from claims that a prisoner has been denied access to services or programs because he is disabled").

## II.    PLAINTIFF HAS NO EIGHTH AMENDMENT CLAIM AGAINST FEDERAL DEFENDANTS

### A.    The BOP, Through Its Contract With GEO Group, Does Not Exert "Supervision And Control" Over Rivers Operations Sufficient To Subject The BOP To FTCA Liability

Plaintiff asserts that the medical care he has received while incarcerated at Rivers has been inadequate in violation of the Eighth Amendment.  Plaintiff does not allege that any BOP official or employee had any involvement with his medical care or treatment, or lack thereof.  Indeed, plaintiff states that GEO Group, Inc. has "undertaken the duty to provide Constitutionally adequate medical care."  Compl. ¶ 6.  However, he also states that the BOP "has the responsibility for over-seeing, controlling, managing, and supervising . . . Rivers, and those persons incarcerated therein," and that BOP Director Lappin "is responsible for overseeing the administration of the BOP and approving all BOP policies relating to the treatment of . . . those persons, such as plaintiff, incarcerated at Rivers."  Id. ¶¶ 7-8.  Elsewhere, plaintiff similarly states that GEO is "under BOP supervision and control" in regard to its provision of medical care to Rivers inmates.  Id. ¶ 13.  Plaintiff purports to rely on the terms of the BOP-GEO contract for these assertions.  Id. ¶ 14.

Plaintiff does not set forth any legal framework under which the BOP could be held to have violated the Eighth Amendment based on the actions of GEO Group employees or agents.  Plaintiff's repeated reference to the BOP's alleged "supervision and control" over GEO Group echoes the analysis under which a court determines whether the United States can be held liable for damages based on negligent acts of contractors under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346.  See Macharia v. United States, 238 F. Supp. 2d 13, 27-28 (D.D.C. 2002).

-14-

Yet, plaintiff has not asserted an FTCA claim, and he cannot assert an FTCA claim against the United States based on an alleged Eighth Amendment violation.[7] FDIC v. Meyer, 510 U.S. 471, 478 (1994) ("[T]he United States simply has not rendered itself liable ... for constitutional tort claims."); Zakiya v. United States, 267 F. Supp. 2d 47, 56 (D.D.C. 2003).

Moreover, the actual terms of the BOP-GEO contract do not support plaintiff's allegation that the BOP engages in "supervision and control" over GEO Group's operation of the Rivers facility. The BOP-GEO contract did require GEO, prior to the start of the contract term, to develop plans, policies and procedures and to submit these to the BOP Contracting Officer "for review and concurrence prior to issuance of the [Notice to Proceed with the contract]." Contract Statement of Work ("SOW") at 5-6. These plans, policies, and procedures are not to be modified by GEO "without the prior written acknowledgment of the CO." Id. at 6. The contract also sets forth certain hiring standards with the stated aim of ensuring "professionalism and personal integrity" in contractor staff. Id. at 10. Among other things, it requires that GEO provide the BOP with applicants' fingerprints so that the BOP can initiate FBI name and fingerprint checks. Id. at 12. Following successful name and fingerprint checks, the contract requires GEO to conduct urinalysis drug testing and limited background investigations of those to whom GEO decides to offer conditional employment. Id. at 12-13. In circumstances where the background investigation reveals negative information, such as a prior criminal history, and GEO submits a "request for waiver" to the CO, the contract gives the BOP authority to decide whether or not to

---

[7]Officials sued in their official capacity are treated the same as the government in this regard. Clark v. Library of Congress, 750 F.2d 89, 103 (D.C. Cir. 1984) ("Sovereign immunity ... bar[s] suits for money damages against officials in their official capacity absent a specific waiver by the government.").

grant the waiver.  Id. at 14.

While imposing a host of requirements on GEO in connection with general administration, fiscal management, training, records, information systems, security and control, and other matters, including the provision of health care, the contract states that "[t]he BOP anticipates a nominal number of BOP staff will be on-site to monitor contract performance and manage other BOP interests associated with operation of the private facility." Id. at 25.  The contract also "reserves [the BOP's] rights to conduct announced and unannounced inspections" at any time in order to assess contract compliance.  Id. at 7.

None of these provisions come close to indicating that the BOP maintains "supervision and control" over Rivers operations, including its provision of health care to its resident inmates. See Macharia, 238 F. Supp. 2d at  28 (recognizing that the "type of general supervisory control that requires the contractor to comply with regulations and guidelines issued by the government" does not subject the government to FTCA liability, even where the government "'fix[es] specific and precise conditions to implement federal objectives' within a contract with an independent contractor" (quoting United States v. Orleans, 425 U.S. 807, 815-16 (1976)); see also Logue v. United States, 412 U.S. 521 (1973) (holding county jail was an independent contractor with the BOP, so the BOP was not liable for actions of jail employees); accord Cannon v. United States, 645 F.2d 1128, 1134 (D.C. Cir. 1981); Phillips v. Fed. Bur. of Prisons, 271 F. Supp. 2d 97, 100 (D.D.C. 2003).  The BOP therefore cannot be held liable on this basis.

**B.      Plaintiff's Failure To Cite A BOP Policy Or Custom Allegedly Responsible For The Eighth Amendment Violations He Asserts Is Fatal To His Claim Against Federal Defendants**

In regard to plaintiff's claim for declaratory and injunctive relief, brought directly under the Eighth Amendment, the D.C. Circuit has made clear that such a claim against an entity, rather than an individual, requires a "two-step inquiry." Baker v. Dist. of Columbia, 326 F.3d 1302, 1306 (D.C. Cir. 2003). First, plaintiffs must "state[] a claim for a predicate constitutional violation," which requires both that the alleged harm at issue is sufficiently serious and that prison officials "had subjective knowledge of the serious medical need and recklessly disregarded the excessive risk to inmate health or safety" that arose from that need. Id. This first step establishes a claim of constitutional harm but does not identify anyone other than the individual prison officials as responsible for that harm.

To state a claim against a government entity, a plaintiff must proceed to the second step. The second step recognizes that, in order for a government entity to be held responsible for a constitutional violation, it must have caused the alleged injury. City of Canton v. Harris, 489 U.S. 378, 385 (1989) (requiring a "direct causal link" between the government's action and the alleged constitutional deprivation). The step therefore requires a plaintiff to allege the existence of "a policy or custom" that was the "'moving force' behind the constitutional violation." Baker, 326 F.3d at 1306 (quoting City of Canton, 489 U.S. at, 389). The "policy or custom" must of course be that of the entity against whom the claim is asserted. See id. (specifying that the "policy or custom" must be that "of the District of Columbia" where the claim was against the District). Here, where the BOP does not itself operate the facility where the alleged constitutional violations occurred, nor employ or contract with the prison officials or medical

-17-

professionals who allegedly committed them, the standard for asserting such a claim must be particularly high.

Plaintiff points to no policy or custom of the BOP that could be considered responsible for the Eighth Amendment violations he asserts. Plaintiff cites provisions of the BOP-GEO contract that impose obligations on GEO with respect to the provision of medical care. Compl. ¶ 14(a-b). Plaintiff also alleges that the fact that GEO "is a private for-profit corporation" provides it with an "incentive to cut costs by infringing upon the constitutional rights of prisoners in order to ensure the profitability of the enterprise." Id. ¶ 33. To the extent that plaintiff's Complaint can be interpreted as alleging systemically inadequate medical care at Rivers based on upon his experience alone, id. ¶¶ 3, 17, the only actions alleged are those of Rivers personnel, not of the BOP.

Plaintiff cannot state a viable Eighth Amendment claim against federal defendants simply by virtue of the fact that the BOP has complied with D.C. law, as enacted by Congress, requiring the use of private contract facilities to house a certain number of D.C. inmates, nor that the BOP granted a contract to GEO Group to conduct this activity. Nor can plaintiff plausibly allege that the contract between the BOP and GEO Group, which places obligations on GEO Group with respect to its provision of health care services to inmates, qualifies as a BOP policy or custom that might have caused GEO Group's alleged failure to provide adequate health care. As recognized by the Supreme Court, any such allegation would simply make no sense. See City of Canton, 489 U.S. at 386-87 (observing that "[i]t is difficult to see what constitutional guarantees are violated by . . . a policy" that requires the city jailer to "have [a person needing medical care] taken to a hospital for medical treatment, with permission of his supervisor" (internal quotation

omitted)).  Because plaintiff cites no policy or custom of the BOP that might be responsible for

the allegedly inadequate medical care that he has received at Rivers, he fails to state an Eighth

Amendment claim against federal defendants.

## III.    PLAINTIFF HAS NO DAMAGES CLAIM AGAINST FEDERAL DEFENDANTS

Even if plaintiff's Complaint stated a claim against federal defendants under the Eighth

Amendment or under Section 504 of the Rehabilitation Act, plaintiff cannot seek damages from

federal defendants under either of these provisions.  Plaintiff does not appear to seek damages

from federal defendants.[8]  The following discussion may therefore be unnecessary.  However, to

the extent plaintiff's Complaint is construed as seeking damages from federal defendants, such a

damages claim, whether under Section 504 of the Rehabilitation Act or under the Eighth

Amendment, would be barred by sovereign immunity.

"Absent waiver, the doctrine of sovereign immunity shields the federal government from

suit."  Tri-State Hosp. Supply Corp. v. United States, 341 F.3d 571, 575 (D.C. Cir. 2003) (citing

FDIC, 510 U.S. at 474).  The Supreme Court has held that any waiver of sovereign immunity

"must be 'unequivocally expressed in the statutory text' and 'strictly construed, in terms of its

scope, in favor of the sovereign.'"  Id. (quoting Dep't of Army v. Blue Fox, Inc., 525 U.S. 255,

261 (1999)).  Because the United States' consent to be sued is a jurisdictional prerequisite, the

express terms of this consent "'define [a] court's jurisdiction.'"  Id. (quoting United States v.

Sherwood, 312 U.S. 584, 586 (1941)).  Accordingly, the Supreme Court has recognized that "[t]o

sustain a claim that the Government is liable for awards of monetary damages, the waiver of

---

[8]Plaintiff's Complaint states that he "seeks to recover punitive and compensatory damages . . . from defendant GEO" and "seeks declaratory and injunctive relief . . . [against] the named defendants."  Compl. at 19.

sovereign immunity must extend unambiguously to such monetary claims." Lane v. Pena, 518 U.S. 187, 192 (1996). In other words, the availability of monetary damages must be expressed in the statutory text. Id.

In regard to plaintiff's Eighth Amendment claim, the Supreme Court has previously held that there is no implied Bivens-type claim against federal agencies for damages based on alleged violations of constitutional rights. FDIC, 510 U.S. at 484. Nor, as previously noted, can federal agencies be sued for damages under the FTCA based on such violations. Id. at 478; Zakiya, 267 F. Supp. 2d at 56.

In regard to plaintiff's claim of disability-based discrimination, even assuming that claim is construed as a claim under Section 504 of the Rehabilitation Act, damages are also barred. It is settled law in this Circuit that, because nothing in the text of the Rehabilitation Act authorizes an award of monetary damages for violations of Section 504, the United States has not waived sovereign immunity for such claims. See Dorsey v. United States Dep't of Labor, 41 F.3d 1551, 1555 (D.C. Cir. 1994). As indicated above, Section 504 of the Rehabilitation Act prohibits discrimination against any "otherwise qualified individual with a disability" in programs and activities that "receiv[e] Federal financial assistance" or that are "conducted by any Executive agency." 29 U.S.C. § 794(a). In Dorsey, the D.C. Circuit held that, even assuming that the plaintiff was an otherwise qualified individual with a disability, and that he had been discriminated against in violation of the Act, sovereign immunity barred the plaintiff from recovering damages from the Department of Labor. Id. at 1554-55. The Dorsey plaintiff sought damages based on the Department of Labor's provision of financial assistance to the Job Corps program. In support of his claim, the Dorsey plaintiff invoked the Rehabilitation Act provision

stating that "[t]he remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 shall be available to any person aggrieved by any act or failure to act by any recipient of Federal assistance or Federal provider of such assistance." 29 U.S.C. § 794a(a)(2). However, the court held that, even if a private right of action for damages can be inferred from this language, no such claim can be brought against the federal government because neither Title VI nor the Rehabilitation Act contain "any explicit language . . . waiving the government's sovereign immunity" for damages claims. Dorsey, 41 F.3d at 1555 ("While private rights of action may be implied, waivers of sovereign immunity may not.").

In Lane v. Pena, the Supreme Court followed similar reasoning when holding that sovereign immunity also bars Rehabilitation Act claims for damages against Executive agencies relating to programs and activities that they conduct. 518 U.S. at 197. The Court in Lane emphasized that "when it comes to an award of money damages, sovereign immunity places the Federal Government on an entirely different footing" than private defendants, who have been held liable for damages in similar cases. Id. at 196. Indeed, the Court has elsewhere recognized that "special factors counsel[] hesitation in the creation of a damages remedy" against federal agencies, due to the "potentially enormous financial burden" such a remedy would entail, and that decisions involving federal fiscal policy "are not [the Court's] to make." FDIC, 510 U.S. at 472 (internal quotation omitted). Both D.C. Circuit and Supreme Court precedent therefore require the conclusion that sovereign immunity bars monetary damages claims against the federal government for an alleged violation of Section 504 of the Rehabilitation Act. Thus, any construction of plaintiff's Complaint as seeking such damages would be futile.

-21-

**IV.    IN THE ALTERNATIVE, THIS ACTION SHOULD BE TRANSFERRED TO THE EASTERN DISTRICT OF NORTH CAROLINA**

If the Court does not find plaintiff's claims against federal defendants otherwise barred, it should transfer this action to the Eastern District of North Carolina, where Rivers is located and where plaintiff is currently incarcerated.  Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it may have been brought."  There is no question that plaintiffs could have filed this case in the Eastern District of North Carolina.  See 28 U.S.C. § 1391(e).  Thus, even if venue is appropriate in this district, plaintiffs' case is subject to transfer if "particular circumstances . . . render the transferor forum inappropriate by reference to the considerations" listed in § 1404(a).  Starnes v. McGuire, 512 F.2d 918, 925 (D.C. Cir. 1974) (en banc).  Codefendant GEO Group has already submitted arguments in this regard in its alternative motion to transfer, so federal defendants' discussion here supplements those arguments.

The D.C. Circuit has recognized that "petitions filed by prisoners not confined in the District of Columbia and not sentenced here originally[] will tend to involve factors that make transfer to the place of incarceration appropriate."  Id. at 926.  In such circumstances, transfers are warranted "'as a matter of course.'"  Id. (quoting Young v. Director, Bur. of Prisons, 367 F.2d 331, 332 (D.C. Cir. 1966)).

Here, although plaintiff was originally sentenced in D.C., transfer is warranted as well based on the particular circumstances involved.  "In deciding whether transfer is warranted, courts should consider the convenience of the parties and witnesses, as well as the 'interests of justice.'"  Rosales v. United States, 477 F. Supp. 2d 213, 215 (D.D.C. 2007).  While the party

seeking transfer bears the burden of establishing that transfer is appropriate, the Court "has

'broad discretion' to order transfer under this standard."  Id. (quoting In re Scott, 709 F.2d 717,

720 (D.C. Cir. 1983)).

A plaintiff's choice of forum has been considered a relevant factor in this analysis.  E.g.,

Lentz v. Eli Lilly & Co., 464 F. Supp. 2d 35, 37 (D.D.C. 2006).  However, under the

circumstances here, plaintiff's choice of this District deserves little deference in light of other

relevant factors.  A court "may give substantially less deference [to a plaintiff's forum choice]

when the forum preferred by the plaintiff is not his home forum."  Stern v. Fed. Bur. of Prisons,

No. 07-00564, 2007 WL 1555830, at *1 (D.D.C. Mar. 22, 2007) (citing Piper Aircraft, Co. v.

Reyno, 454 U.S. 235, 255-56 (1981)).  The home forum for incarcerated plaintiffs "for purposes

of venue is the place of . . . incarceration."  Id. (citing Starnes, 512 F.2d at 925 n.7).  Here, the

home forum is therefore the Eastern District of North Carolina.

The nature of a plaintiff's claims determines the type of evidence that will be involved in

this case, which in turn weighs in favor of transfer.  Through his Eighth Amendment and

disability discrimination claims, plaintiff here challenges the conditions of his confinement.  His

challenge thus necessarily involve circumstances that exist on location at Rivers.  Cf. Smart v.

Good, 21 F. Supp. 2d 309, 316 (S.D.N.Y. 1998) (contrasting an inmate's challenge to "the

legitimacy of her conviction and sentence" with a challenge to "the conditions of her

confinement").  Even if plaintiffs' Complaint could be interpreted as pointing to a BOP policy or

custom as the cause of the violations he alleges, any relevant BOP policy or custom affected

plaintiffs only through its implementation at Rivers.  See Stern, No. 07-00564, 2007 WL

1555830, at *2 (holding that, "because the implementation of the national policy [of which

-23-

plaintiffs complained] occurred in Butner, North Carolina, venue is more appropriate there");

accord Zakiya, 267 F. Supp. 2d at 58-59; Huskey v. Quinlan, 785 F. Supp. 4, 7 (D.D.C. 1992).

Because all events relevant to plaintiffs' claims occurred at Rivers, the medical and other

records and most witnesses are located there as well and are thus more accessible in the Eastern

District of North Carolina.  See Skinner v. United States, No. 05-2237, 2007 WL 744737, at *4

(D.D.C. Mar. 6, 2007) (observing "the likelihood that relevant medical records accompanied

plaintiff to" place of current incarceration); Joyner v. Dist. of Columbia, 267 F. Supp. 2d 15, 20-

21 (D.D.C. 2003) ("In cases in which the plaintiff's claims will require testimony or files that are

most easily obtained at or near the place of incarceration, 'the district in which the institution is

located will ordinarily be the more convenient forum'" (quoting Starnes, 512 F.2d at 931));

Rogers v. Fed. Bur. of Prisons, 257 F. Supp. 2d 147, 148 (D.D.C. 2003).  In particular, because

plaintiff himself is a likely witness in this case, "the difficulty of transferring a prisoner,

compared to the relative ease with which federal officials" and other nonincarcerated witnesses

can travel to the district where the prison is located to give evidence, makes it "appropriate and

efficient to have this suit heard in a District close [to] the [plaintiffs'] place of incarceration."

Huskey, 785 F. Supp. at 7.  The interests of justice therefore favor transfer of this action to the

Eastern District of North Carolina.


## CONCLUSION

For the foregoing reasons, the claims against federal defendants should be dismissed in

their entirety.  In the alternative, any surviving claims should be transferred to the Eastern

-24-

District of North Carolina.


Dated: December 10, 2007                    Respectfully submitted,

                                            JEFFREY S. BUCHOLTZ
                                            Acting Assistant Attorney General
                                            JEFFREY A. TAYLOR
                                            United States Attorney
                                            VINCENT M. GARVEY
                                            Deputy Branch Director

                                            /s/ Kathryn L. Wyer
                                            KATHRYN L. WYER
                                            U.S. Department of Justice, Civil Division
                                            20 Massachusetts Ave. NW, Room 7218
                                            Washington, D.C.  20001
                                            Telephone: (202) 616-8475 / Fax: (202) 616-8202
                                            kathryn.wyer@usdoj.gov
                                            *Attorneys for Federal Defendants*

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on this 10th day of December, 2007, a true and correct copy of the

foregoing FEDERAL DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE,

TO TRANSFER and MEMORANDUM IN SUPPORT was filed electronically via CM/ECF and

a copy was served via U.S. First Class Mail, postage prepaid, on the following:

> Frederick Hines
> # 33592-007
> Rivers Correctional Institution
> 145 Parker's Fishery Road
> Winton NC 27986
> *Pro Se Plaintiff*

/s/ Kathryn L. Wyer
Kathryn L. Wyer

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| FREDERICK HINES, | ) |
| | ) |
| Plaintiff (Pro Se), | ) |
| | ) |
| v. | )    Civil Action No. 07-1664 (JDB) |
| | ) |
| GEO GROUP, INC.; UNITED STATES OF | ) |
| AMERICA, through its department, the FEDERAL | ) |
| BUREAU OF PRISONS; and HARLEY LAPPIN, | ) |
| in his official capacity as Director of the | ) |
| FEDERAL BUREAU OF PRISONS, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**[Proposed] ORDER**

Upon the Court's consideration of federal defendants' motion to dismiss, the opposition

thereto, and the entire record in this case, it is, this _____ day of _____, 200__,

ORDERED that federal defendants' motion to dismiss is granted; and it is

FURTHER ORDERED that all claims asserted against federal defendants in the above-

captioned case are hereby dismissed with prejudice.

_____
The Honorable John D. Bates
United States District Judge