IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FREDERICK HINES,                    )
                                    )
            Plaintiff,              )
                                    )
v.                                  )        **Case No. 1:07-cv-01664**
                                    )
THE GEO GROUP, INC., *et al.*,      )
                                    )
            Defendants.             )
                                    )

## REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT GEO GROUP, INC.'S MOTION TO DISMISS AND ALTERNATIVE MOTION TO TRANSFER

## I.    THE COURT LACKS PERSONAL JURISDICTION OVER GEO

Plaintiff contends that his action should not be dismissed for lack of personal jurisdiction because GEO has the requisite minimum contacts necessary for this Court to exercise personal jurisdiction over GEO.[1]  However, minimum contacts is only one portion of a personal jurisdiction analysis[2]. In addition to establishing that a defendant has minimum contacts with the forum state, the plaintiff must establish that the forum's long arm statute allows for the exercise of jurisdiction over the defendant. *See United States v. Ferrara*, 54 F.3d 825, 828 (D.C. Cir. 1995).

In this case, because of the government contacts exception to the District of Columbia's long arm statute, Plaintiff cannot establish that the forum's long arm statute allows for the

---

[1] The personal jurisdiction argument contained in Plaintiff's Response brief is copied, almost word for word, from the Response in Opposition to GEO's Motion to Dismiss filed by counsel for the plaintiffs in *Mathis v. GEO Group, Inc.*, 1:07-cv-01155-RMU.

[2] GEO would also note that it does not maintain offices in the District of Columbia. See Carrillo Dec. at ¶ 3 (attached hereto as Exhibit 1. Also available at Docket Number 21, Ex. 1 in *Mathis*)

exercise of jurisdiction over GEO.[3]  Plaintiff's Response fails to contest the application of the government contacts exception to this matter.  Therefore, the Court should deem this issue as conceded and dismiss Plaintiff's claims for lack of personal jurisdiction.

## II.    THE COURT SHOULD DISMISS PLAINTIFF'S *BIVENS'* CLAIM BECAUSE GEO MAY NOT BE HELD LIABLE UNDER *BIVENS*

Plaintiff alleges that he has stated a claim upon which relief may be granted pursuant to the Supreme Court's holding in *Lugar v. Edmondson Oil Co.*, 457 U.S. 992, 102 S. Ct. 2744, 73 L. Ed. 2d 482 (1982).  However, *Lugar* is inapplicable to this case because it involved a claim pursuant to 42 U.S.C. § 1983, not *Bivens*.  Additionally, the Supreme Court rejected Plaintiff's position in *Correctional Services Corporation v. Malesko*, 534 U.S. 61, 122 S. Ct. 515, 151 L. Ed. 2d 456 (2001).  Thus, the Court should dismiss Plaintiff's Eighth Amendment action for failure to state a claim upon which relief may be granted.

*Lugar* is distinguishable from the instant action because *Lugar* did not involve a claim under *Bivens*, but instead involved a claim pursuant to 42 U.S.C. § 1983.  *See Lugar*, 457 U.S. at 925, 102 S. Ct. at 2747.  While Plaintiff attempts to transplant Lugar's 1983 state actor analysis onto his Bivens claims, the Supreme Court has "never held that the contours of *Bivens* and § 1983 are identical." *Malesko*, 534 U.S. at 82, 122 S. Ct. at 527 (Stephens, J. dissenting).

One of the primary areas in which the contours of *Bivens* and § 1983 diverge is in the area of the implication of liability against non-governmental actors.  While under certain circumstances, liability may be imposed upon private actors under § 1983, *see Lugar*, 457 U.S. at 936-37, 102 S. Ct. at 2752-53, the Supreme Court has rejected imposing such liability upon non-governmental actors in the *Bivens* context, *see Malesko*, 534 U.S. at 71, 122 S. Ct. at 522.  *See*

---

[3] Plaintiff erroneously asserts that pursuant to the terms of its contract with the BOP, GEO has consented to jurisdiction in the District of Columbia.  This argument is incorrect.  Plaintiff has not cited any language in the BOP Contract in which GEO consents to the jurisdiction of the District of Columbia Courts.

*also Daniels v. Union Pacific R. Co.*, 480 F. Supp. 2d 191, 196 (D.D.C. 2007) ("[T]he fact that union Pacific is a private corporation is fatal ... to plaintiffs' *Bivens* claim....").

Plaintiff attempts to overcome this distinction by alleging that GEO has conceded that it is a federal actor in the *Mathis* case. (Pl's. Mem. in Opp. at 25.)    Plaintiff's assertion misconstrues both the scope and substance of the issues at play in *Mathis*.   The language cited by Plaintiff had nothing to do with a state actor analysis, but instead dealt with the application of the government contacts doctrine to the personal jurisdiction analysis in *Mathis*.   The question at issue in *Mathis* was whether *Ramamurti v. Rolls-Royce, Ltd.*, 454 F. Supp. 407 (D.D.C. 1978), precluded application of the government contacts exception to this matter.   In *Ramamurti*, the District Court's determination of the applicability of the government contacts exception was based upon "the government acting in a proprietary, rather than governmental capacity."   *Id.* at 412.   Therefore, the focus in *Ramamurti* was on whether <u>the federal government</u> was acting its role as the sovereign or whether it was acting as any other member of the public.

In *Mathis*, as in this case, the subject matter of GEO's contacts with the federal government related to a governmental function - the incarceration of individuals.   While the administration of a prison has never been an exclusively governmental function, *See Richardson v. McKnight*, 521 U.S. 399, 117 S.Ct. 2100, 138 L.Ed.2d 540 (1997), undoubtedly, the ability to require an individual to reside in a federal prison is a uniquely governmental power, *see District of Columbia v. Totten*, 5 F.2d 374, 376 (D.C. Cir. 1925) (holding that the police power of the state is implicated in the incarceration of individuals).   Unlike in *Ramamurti*, where Rolls-Royce could sell its products to the federal government like any other member of the general public, there are no circumstances where GEO would be able to administer a prison for a member of the general public.   Therefore, GEO's contacts with the federal government addressed a uniquely

3

governmental function, implicating the government contacts exception to the District of Columbia's long-arm statute.   When viewed in the correct context, Plaintiff's citation of language from *Mathis* lends no support for his position that GEO is a federal actor subject to suit under *Bivens*.

The Supreme Court's decision in *Malesko* further undercuts Plaintiff's position that GEO should be held liable under *Bivens*.   As explained in more detail in GEO's Memorandum in Support – the Supreme Court held that a plaintiff may not bring a *Bivens* action against private companies which administer a federal prison.   *See Malesko*, 534 U.S. at 71, 122 S. Ct. at 521. Plaintiff has failed to make any attempt to explain to this Court why it should disregard *Malesko*. Therefore, this Court should adhere to the Supreme Court's holding in *Malesko* and dismiss Plaintiff's *Bivens* claim.

**III.**   **THE COURT SHOULD DISMISS PLAINTIFF'S ADA CLAIM BECAUSE HE HAS FAILED TO PLEAD ANY OF THE NECESSARY ELEMENTS OF SUCH A CLAIM**

Plaintiff alleges that he has stated a claim under the ADA because he has been deemed "totally disabled" by various federal agencies.  (Pl's. Mem. in Opp. at 26-27.)  However, as set forth in GEO's Memorandum in Support, courts have repeatedly rejected that the specific disability alleged by Plaintiff, difficulty walking, is insufficient to establish that he is substantially limited in a major life activity.  (GEO's Mem. in Supp. at 7-9.)  Therefore, Plaintiff has failed to state a claim for a violation of the ADA and this claim should be dismissed.

Plaintiff also fails to address GEO's second argument regarding the ADA claim: that Plaintiff's Complaint conclusively establishes that he was not discriminated against solely because of his disability.   Without refuting this argument, Plaintiff has failed to establish a

necessary element of his claim and, thus, it fails as a matter of law.  *See Henry v. Guest Servs., Inc.*, 902 F. Supp. 245, 251 (D.D.C. 1995).

## IV. TRANSFERRING THIS MATTER TO THE EASTERN DISTRICT OF NORTH CAROLINA IS IN THE INTEREST OF JUSTICE

As discussed more thoroughly in GEO's Memorandum in Support, if this action is to be adjudicated, it should be heard in North Carolina.  In response, Plaintiff has made the improbable argument that his claims for inadequate medical care while incarcerated in North Carolina did not arise in North Carolina; cited cases which are readily distinguishable from the case before the court; and misstated the holdings of several relevant cases.

### A. THE PRACTICAL REALITIES OF PRISONER TRANSPORT NEGATE ANY IMPACT OF THE PLAINTIFFS' CHOICE OF FORUM

The determination of whether this action should remain in the District of Columbia or be transferred to the Eastern District of North Carolina begins and ends at the prison doors.  While a plaintiff's choice of forum is typically afforded deference, the practical realities of producing incarcerated parties and witnesses at court proceedings overwhelm the benefit of according a plaintiff the benefit of his choice of forum.  As a result, "transferring the action to the district wherein the prisoner is incarcerated serves the interest of justice."  *Rogers v. Federal Bureau of Prisons*,  257 F. Supp. 2d 147, 148 (D.D.C. 2003).

Plaintiff claims that the Court of Appeals decision in *Starnes v. McGuire*, 512 F.2d 918 (D.C. Cir. 1974) (en banc) stands for the proposition that "GEO's argument about inconvenience on behalf of its litigation opponents should be given no weight, and the Court has held that this argument can be disregarded if a prisoner chooses the District of Columbia as his forum."  Pls'. Br. at 18.  This assertion misstates the Court of Appeals' holding in *Starnes*.  The Court of Appeals' actual holding in *Starnes* was:

> Petitioner also notes that the Board has its offices in the District of Columbia, that most hearing examiners are members of the Board and are based in Washington, and that the main Board files are here. From this he argues that the Board cannot be inconvenienced by suit in this district; and that, because plaintiff's choice of forum is normally to be preferred, transfer is not proper if the plaintiff is the only person inconvenienced by the forum.
>
> The essential element in this argument is the concept that the difficulties of transferring a prisoner to this district for hearing are an inconvenience only to the prisoner, and that he should be able to force the court to ignore such inconveniences. We believe, however, that the greater ease with which federal officials can travel to the prison to give evidence, as opposed to the difficulties of transporting the prisoner, is an appropriate factor to be considered, and one that the prisoner cannot eliminate by stating his preference for this forum.

*Starnes*, 512 F.2d at 927-28. *Starnes* does not stand for the proposition put forward by Plaintiff, but instead the absolute opposite: a prisoner's choice of forum does not require the court to ignore the practical realities of transferring a prisoner from North Carolina to the District of Columbia.

*Starnes* provides additional grounds in support of the transfer of this action. The court in *Starnes* held:

> [m]any prisoner petitions will potentially involve testimony by the prisoner as to events in which he participated.  The burdens and dangers involved in transporting a prisoner across long distances are, in our opinion, a significant inconvenience to the Bureau of Prisons and will normally justify transfer.

*Id*. at 930-31. *Starnes,* goes on to state "[i]n some cases the claim will require testimony or files most easily obtained at or near the place of incarceration.  In such cases, the district in which the institution is located will ordinarily be the more convenient forum." *Id*. at 931.  A thorough review of *Starnes* indicates that instead of supporting Plaintiff's argument, it is directly contrary to Plaintiff's arguments and supports transfer to North Carolina

**B.    RETAINING VENUE IN THE DISTRICT OF COLUMBIA WOULD INCONVENIENCE WITNESSES AND THE INMATE POPULATION OF RIVERS CORRECTIONAL INSTITUTION**

Plaintiff further misstates GEO's arguments with respect to the convenience of witnesses. GEO has not conceded that the District of Columbia is a convenient forum for those witnesses who are parties, employees of parties, or experts. Instead, GEO has indicated that these individuals could likely be compelled to appear to testify. (GEO Mem. in Supp. at 15.)

Contrary to Plaintiff's assertion, GEO has explicitly argued that there would be great inconvenience to the staff and inmates at Rivers Correctional Institution if they were required to attend hearings or a trial in the District of Columbia.[4] (GEO Mem. in Supp. at 15.) The Rivers medical staff will undoubtedly be required to testify in this matter. Travel to and from the District of Columbia would substantially inconvenience these individuals, and would result in a reduced number of staff to attend to the medical needs of the inmates at Rivers. As Plaintiff has alleged that "[m]edical professional staffing levels at Rivers are grossly inadequate[,]" Compl. ¶ 3, an allegation GEO strongly denies, Plaintiff cannot now contend that it would be in the interest of justice to require the medical staff to travel to the District of Columbia to testify in hearings or at trial.

Additionally, the administration, monitoring, and oversight of the Rivers Contract are handled by individuals located at Rivers Correctional Institution. *See* Martin Dec. ¶¶ 7-9 (attached hereto as Exhibit 2; also available at Docket Number 21, Ex. 2 in *Mathis*). Therefore, it would be more convenient for these individuals to appear in a court in North Carolina.

## C.    THE DISTRICT OF COLUMBIA DOES NOT HAVE A SUBSTANTIALLY GREATER INTERESTS IN ADJUDICATING THIS MATTER THAN NORTH CAROLINA

Plaintiff claims that *Jackson v. District of Columbia*, 89 F. Supp. 2d 48, 53 (D.D.C. 2000), *vacated in part*, 254 F.3d 262 (2001) established that D.C. District Courts have a

---

[4] Plaintiff has touched on the fact that all parties are represented by D.C. Counsel. Pls'. Br. at 17. This point is generally irrelevant to the consideration of GEO's motion to transfer. *See McClamrock v. Eli Lilly & Co.*, 267 F. Supp. 2d 33, 40-41 (D.D.C. 2003).

substantial interest in the treatment of prisoners sentenced within their borders. Once again, a complete review of the court's holding demonstrates that Plaintiffs' have inaccurately stated the court's holding.

The court in *Jackson* found that the interests of the transferee and transferor districts had essentially the same level of interest in hearing the case. "Virginia certainly has an interest in providing the forum for a case that addresses its government's policies. The District of Columbia, however, has a similar interest: the treatment of prisoners sentenced within its borders, many of whom undoubtedly are its citizens." *Id.* Thus, *Jackson* does not stand for the proposition that the District of Columbia has a "strong," "substantial," or "paramount" interest, Pls'. Mem. in Supp. at 21-22, in adjudicating this matter, instead, this Court and the District of Columbia has, at best, an interest that is similar to the interest of the courts in North Carolina.

**CONCLUSION**

Based upon the foregoing arguments and authorities, GEO's Motion to Dismiss should be granted. In the alternative, if GEO's Motion to Dismiss is denied, this action should be transferred to the Eastern District of North Carolina for further proceedings.

This the 10th day of December, 2007.

Respectfully submitted,

/s/ Deborah J. Israel
Deborah J. Israel (DC Bar No. 430841)
Womble Carlyle Sandridge & Rice, PLLC
1401 Eye Street, NW, 7th Floor
Washington, DC 20005
(202) 857-4466
*Counsel for Defendant GEO Group, Inc.*

## CERTIFICATE OF SERVICE

This is to certify that on this 10th day of December, 2007, a true and correct copy of the

foregoing **REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**

**DEFENDANT GEO GROUP INC'S MOTION TO DISMISS AND ALTERNATIVE**

**MOTION TO TRANSFER** was filed electronically via CM/ECF system and a copy was served

via U.S. First-Class Mail, postage prepaid on the following:

> Frederick Hines
> #33592-007
> Rivers Correctional Institution
> 145 Parker's Fishery Road
> Winton, NC  27986
> *Pro Se Plaintiff*

                                                    /s/ Deborah J. Israel
                                                    Deborah J. Israel

# EXHIBIT 1

## Declaration of Louis Carrillo

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| KEITH MATHIS, et al., | ) |
| Plaintiffs, | ) |
| v. | ) Case No. 1:07-cv-01155-RMU |
| GEO GROUP, INC., et al., | ) |
| Defendants. | ) |

## DECLARATION OF LOUIS CARRILLO

I, Louis Carrillo, under penalty of perjury, hereby declare as follows:

1.    I am over 18 years of age, competent to testify, and give this declaration of my own personal knowledge for use in the above captioned matter.

2.    I am employed as Vice President Corporate Counsel by The GEO Group, Inc. ("GEO").

3.    GEO does not maintain a business presence in Washington, D.C.  GEO does not maintain a physical office in Washington, D.C..

4.    When necessary, representatives of GEO will travel to Washington, D.C. to meet with members of Congress and representatives of administrative agencies to discuss issues relevant to GEO.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on ___8 . 20 . 07___

_____
Louis Carrillo

# EXHIBIT 2

# Declaration of Amber Martin

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

KEITH MATHIS, et al.,                    )
                                         )
              Plaintiffs,                )
                                         )
v.                                       )         Case No. 1:07-cv-01155-RMU
                                         )
GEO GROUP, INC., et al.,                 )
                                         )
              Defendants.                )
                                         )

## DECLARATION OF AMBER MARTIN

I, Amber Martin, under penalty of perjury, hereby declare as follows:

1.      I am over 18 years of age, competent to testify, and give this declaration of my
own personal knowledge for use in the above captioned matter.

2.      I am employed as a Vice President – Contract Administration by The GEO
Group, Inc.

3.      As Vice President – Contract Administration I am responsible for contract
administration including negotiations, drafting, and compliance.

4.      On February 22, 2000, Wayne H. Calabrese, the President of Wackenhut
Corrections Corporation ("WCC"), now The GEO Group, Inc. ("GEO"), executed contract
number PCc-005 ("Rivers Contract") on behalf of WCC. Mr. Calabrese executed the contract at
WCC's corporate headquarters in Palm Beach Gardens, Florida. The contract was then returned
to the Federal Bureau of Prisons in Washington, D.C..

5.    The Bureau of Prisons subsequently executed the contract and returned it to WCC's corporate headquarters.  A true and accurate copy of the cover letter from the Bureau of Prisons to Mr. Calabrese is attached hereto as Exhibit 1.

6.    The Bureau of Prisons' monitoring and administration of the Rivers Contract takes place at Rivers Correctional Institution in Winton, North Carolina.  The monitoring and administration is undertaken by individuals designated by the government as the Contracting Officer, the Contracting Officer's Representative, and the Contracting Officer's Technical Representatives.  A true and accurate copy of the Explanation of Statement of Work Terms defining these terms Contracting Officer is attached hereto as Exhibit 2.  GEO is required by the terms of the Rivers Contract to report directly to these designated individuals.

7.    The contract is administered on behalf of the government by a Contracting Officer ("CO").  The CO for the Rivers Contract is Randy Taylor.  Mr. Taylor's office is located at Rivers Correctional Institution in Winton, North Carolina.

8.    The CO is empowered to designate an individual as the Contracting Officer's Representative (COR).  The COR acts as the contract monitor.  The contract monitor is responsible for the technical direction of the Rivers Contract.  The Senior COR for the Rivers Contract is Thomas Christensen.  Mr. Taylor's office is located at Rivers Correctional Institution in Winton, North Carolina.

9.    The COR is assisted in his monitoring activities by individuals designated as Contracting Officer's Technical Representatives ("COTR").  Barry David and Delgoda Ely are the COTRs currently assigned to the Rivers Contract.  The offices for COTRs David and Ely are located at Rivers Correctional Institution in Winton, North Carolina.

10.    The responsibilities of the COR and COTRs are outlined in Section G.1 of the Rivers Contract. A true and accurate copy of Section G.1 of the Rivers Contract is attached hereto as Exhibit 3.

11.    As required by Section G.1 Rivers Contract, GEO submits all reports and information required to be provided to the government to the COR. GEO does not submit these reports directly to the Bureau of Prisons in Washington, D.C.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on _8-20-07_____

_____
Amber Martin

# ATTACHMENT 1



**U.S. Department of Justice**

**Federal Bureau of Prisons**

_____

*Washington, DC 20534*

March 7, 2000

Wackenhut Corrections Corporation
4200 Wackenhut Drive
Palm Beach Gardens, Florida 33410

Attn: Wayne H. Calabrese, President
RE:    Contract No. J1PCc-005 - District of Columbia Phase II

Dear Mr. Calabrese:

Enclosed is a copy of the fully executed Optional Form 307.

If you have any questions, please feel free to contact me at (202) 616-1647.

Sincerely,

Scott P. Stermer, Contracting Officer
Federal Bureau of Prisons

Enclosures

ATTACHMENT 2

*DISTRICT OF COLUMBIA SENTENCED FELON - Phase II - STATEMENT OF WORK*
*Request for Proposal PCC-0004*

1    II.    EXPLANATION OF STATEMENT OF WORK TERMS

2    ACA - American Correctional Association.  The private, nonprofit
3    organization that administers the only national accreditation
4    program for all components of adult and juvenile corrections.
5    Its purpose is to promote improvement in the management of
6    correctional agencies through the administration of a voluntary
7    accreditation program and the ongoing development and revision of
8    relevant, useful standards.

9    BOP - Federal Bureau of Prisons.

10   BOPDOCS - The electronic document management system for the BOP
11   containing policy, regulations and directives.

12   CO - Contracting Officer.  The Government employee, by virtue of
13   a Contracting Officer's Warrant, empowered to negotiate, award,
14   administer, cancel or terminate contracts on behalf of the United
15   States Government.

16   Contract Award - The date the CO awards the contract.  For the
17   purposes of the contract, the date the CO signs the Standard Form
18   (SF) 33, Solicitation, Offer and Award or the SF 26, Contract
19   Award.

20   COR - Contracting Officer's Representative.  The Government
21   employee designated in writing by the CO authorized to perform
22   certain limited functions on behalf of the CO.  The extent of COR
23   responsibilities are outlined in Section G of the contract and
24   the COR Designation Letter, a copy of which will be provided to
25   the contractor subsequent to contract award.

26   COTR - Contracting Officer's Technical Representative.
27   Government staff designated in writing by the CO who assist the
28   COR in the performance of duties.  The extent of COTR
29   responsibilities are delineated in writing by the CO and will be
30   provided to the contractor subsequent to award.

31   Credentials - Documents providing primary source verification
32   including education, training, licensure, experience, board
33   certification and qualifications of an employee.

34   DC - District of Columbia.

35   DCDOC - District of Columbia Department of Corrections.

2

ATTACHMENT 3

## SECTION G - CONTRACT ADMINISTRATION DATA

### G.1  CONTRACTING OFFICER'S REPRESENTATIVE

(a)  An individual shall be named after contract award and designated as the Contracting Officer's Representative (COR) to act as contract monitor. Numerous individuals will also be named after contract award and designated as Contracting Officer's Technical Representatives (COTR). The COTRs will assist the COR in the performance of monitoring

(b)  The contract monitor is responsible for the technical direction of the performance of all work under this contract. The term "technical direction" is defined to include, without limitation, the following:

1.  Directions to the contractor which re-direct the contract effort, shift work emphasis between areas or tasks, require pursuit of certain lines of inquiry, fill in details or otherwise serve to accomplish the contractual scope of work.

2.  Supply information to the Contractor which assists in the interpretation of technical portions of the Statement of Work.

3.  Review, inspect, and accept reports and information to be provided by the Contractor to the Government under the contract.

4.  Evaluate the performance and certify all invoices for payment.

(c)  Technical direction must be within the general scope of work stated in the contract. The contract monitor does not have authority to, and may not issue, any direction which:

1.  Constitutes an assignment of additional work outside the general scope of the contract.

2.  Constitutes a change as defined in the contract clause entitled "Changes".

3.  Change any of the expressed terms, conditions, fixed price, or time for contract performance. Any such revisions shall be authorized in writing only by the Contracting Officer.

**G.1 (Continued)**

    (d)  In the event the contract monitor desires a change to the contract within one or more of the categories as defined in (1) through (3) of paragraph (b), he must direct such request to the Contracting Officer. The Contracting Officer will handle such request within applicable laws and regulations.

    (e)  During the term of the contract, the Contracting Officer, or his successor, shall administer the contract on behalf of the Government. Technical matters which cannot be resolved by the Contractor and the contract monitor as well as other contractual difficulties, are to be brought to his immediate attention. The Contracting Officer may be reached at the e-mail address and telephone number shown on the OF 308, block 7.

**G.2  PAYMENT SCHEDULE**

In consideration for the contractor's satisfactory performance of services called for under this contract, the BOP shall make payment to the contractor at the rates identified in the schedule. For billing purposes, inmate days will be calculated based upon a daily official (SENTRY) inmate count to be specified by the BOP subsequent to award.

Monthly payment shall be based upon the contractor's fixed price divided by the number of months within each performance period. For the base period and each option period, the fixed incremental unit price will only apply when the number of inmate days within the monthly payment period exceeds 95% of the designated bed space. Except for inmates receiving outside medical care, inmates not physically located within the facility shall not be included in the Average Daily Population.

The contractor assumes full responsibility and risk to perform required services identified within the SOW regardless of unforeseen events, including Acts of God. Should an Act of God occur which results in the contractor being unable to meet contract requirements, the Government reserves its rights under the contract to reduce the contract value.

Should it become necessary during performance to reduce the inmate population within any monthly payment period below an average daily population due to deficient contract performance, the BOP shall reduce the base price and payment