# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| FREDERICK HINES, | ) | |
| | ) | |
| Plaintiff (Pro Se), | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-1664 (JDB) |
| | ) | |
| GEO GROUP, INC.; UNITED STATES OF | ) | |
| AMERICA, through its department, the FEDERAL | ) | |
| BUREAU OF PRISONS; and HARLEY LAPPIN, | ) | |
| in his official capacity as Director of the | ) | |
| FEDERAL BUREAU OF PRISONS, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## FEDERAL DEFENDANTS' REPLY IN SUPPORT OF THEIR
## MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER

## TABLE OF CONTENTS

**PAGE(S)**

TABLE OF AUTHORITIES ..................................................................................................... iii

INTRODUCTION ..................................................................................................................... 1

ARGUMENT .............................................................................................................................. 3

I.    PLAINTIFF FAILS TO STATE AN EIGHTH AMENDMENT CLAIM
      AGAINST FEDERAL DEFENDANTS ................................................................................ 3

      A.    PLAINTIFF CANNOT STATE AN EIGHTH AMENDMENT CLAIM
            BY ALLEGING THAT THE BOP HAS FAILED TO ENFORCE GEO
            GROUP'S CONTRACTUAL OBLIGATIONS ......................................................... 3

      B.    PLAINTIFF CANNOT STATE AN EIGHTH AMENDMENT CLAIM
            BY ALLEGING THAT THE BOP SANCTIONED GEO GROUP'S
            PROVISION OF HEALTH CARE WHERE NO SPECIFIC POLICY
            IS REFERENCED ...................................................................................................... 8

      C.    THE BOP DOES NOT EXERCISE THE DEGREE OF CONTROL OVER
            GEO THAT WOULD BE NECESSARY UNDER ANY STANDARD
            TO ATTRIBUTE GEO GROUP'S ACTS TO THE BOP ....................................... 9

II.   IN THE ALTERNATIVE, TRANSFER TO THE EASTERN DISTRICT OF
      NORTH CAROLINA IS WARRANTED ............................................................................ 11

CONCLUSION ......................................................................................................................... 12

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40 (1999) ...............................................................10

*Baker v. District of Columbia, 326 F.3d 1302 (D.C. Cir. 2003) .......................................2, 5, 7, 10

Bancoult v. McNamara, 227 F. Supp. 2d 144 (D.D.C. 2002) ..........................................................2

Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971) .............................................4

Burton v. Wilmington Parking Auth., 365 U.S. 715 (1961) ...........................................................10

Cannon v. United States, 645 F.2d 1128 (D.C. Cir. 1981) ...............................................................7

*City of Oklahoma City v. Tuttle, 471 U.S. 808 (1985) ...................................................................9

City of St. Louis v. Praprotnik, 485 U.S. 112 (1988) ......................................................................8

*Clayton v. Warlick, 232 F.2d 699 (4th Cir. 1956) ........................................................................11

Cobell v. Norton, 392 F.3d 461 (D.C. Cir. 2004) ...........................................................................6

Farmer v. Brennan, 511 U.S. 825 (1994) .......................................................................................4

*FDIC v. Meyer, 510 U.S. 471 (1994) ............................................................................................9

*Hartline v. Sheet Metal Workers' Nat'l Pension Fund, 201 F. Supp. 2d 1 (D.D.C. 1999) ............11

Hill v. Ogburn, 812 F.2d 679 (11th Cir. 1987) ...............................................................................5

Hopkins v. Women's Div. Gen. Bd. of Global Ministries, 238 F. Supp. 2d 174 (D.D.C. 2002) ...1-2

Karst Envtl. Educ. & Protection, Inc. v. EPA, 403 F. Supp. 2d 74 (D.D.C. 2005) .........................6

Kentucky v. Graham, 473 U.S. 159 (1985) .....................................................................................4

*Logue v. United States, 412 U.S. 521 (1973) .................................................................................7

NLRB v. Express Pub. Co., 312 U.S. 426 (1941) ...........................................................................6

Van Dusen v. Barrack, 376 U.S. 612 (1964) .................................................................................11

## **STATUTES**

D.C. Code § 24-101 ...................................................................................................3, 6, 7

Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346 ....................................................9

28 U.S.C. § 1404(a) ...........................................................................................................11

## INTRODUCTION

Plaintiff's Complaint raised Eighth Amendment and Americans with Disabilities Act ("ADA") claims against federal defendants, the Federal Bureau of Prisons ("BOP") and its Director (collectively, "BOP" or "federal defendants").[1]  Federal defendants moved to dismiss both claims, and in the alternative, to transfer this action to the Eastern District of North Carolina, explaining in their memorandum in support of that motion ("Fed. Defs.' Op. Br.") that plaintiff failed to state an Eighth Amendment claim against federal defendants, that the ADA did not apply to the federal government, and that the actions at issue took place, and the relevant evidence is located, in E.D.N.C.  Federal defendants also explained that plaintiff did not appear to seek damages from federal defendants, but that even if he were, the federal government could not be held liable for monetary damages in this action.  Plaintiff's response to federal defendants' motion either concedes or fails to overcome the defects that federal defendants have identified.  Plaintiff has also failed to show why this action should not be transferred to the Eastern District of North Carolina.

In regard to his ADA claim and his possible request for damages, plaintiff fails to contest the inapplicability of the ADA to federal defendants and does not rebut federal defendants' interpretation of the Complaint as not seeking damages from federal defendants.  Thus, plaintiff's ADA claim against federal defendants, as well as any damages claim against federal defendants that might be construed from plaintiff's Complaint, should be deemed conceded.  LCvR 7.1(b); see, e.g., Hopkins v. Women's Div. Gen. Bd. of Global Ministries, 238 F. Supp. 2d 174, 178

---

[1] Plaintiff's Complaint also names GEO Group, Inc., a private party, as a defendant.  This memorandum addresses plaintiff's claims only insofar as they are directed at federal defendants. GEO Group, Inc. has filed its own motion to dismiss or transfer.

(D.D.C. 2002) ("It is well understood in this Circuit that when a plaintiff files an opposition to a motion to dismiss addressing only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.") (citing cases); Bancoult v. McNamara, 227 F. Supp. 2d 144, 149 (D.D.C. 2002) ("[I]f the opposing party files a responsive memorandum, but fails to address certain arguments made by the moving party, the court may treat those arguments as conceded, even when the result is dismissal of the entire case.").  In the alternative, these claims should be dismissed for the reasons set forth in federal defendants' opening brief.[2]

In regard to plaintiff's Eighth Amendment claim, federal defendants have explained that a claim that Eighth Amendment violations have occurred at the Rivers Correctional Institution ("Rivers"), a private prison operated by codefendant GEO Group, Inc. ("GEO Group" or "GEO") under contract with the BOP, is insufficient to state a claim that the BOP has committed the alleged violations.  Rather, under the D.C. Circuit's controlling opinion in Baker v. District of Columbia, 326 F.3d 1302, 1306 (D.C. Cir. 2003), in order to state an Eighth Amendment claim against a government entity, a plaintiff must identify a policy or custom of the government entity as the moving force behind the alleged Eighth Amendment violations.  Plaintiff's memorandum in opposition to federal defendants' motion fails to identify any BOP policy or custom that could conceivably be considered the moving force behind GEO Group's alleged failure to provide plaintiff with the medical treatment that he claims he needs.  Instead, plaintiff attempts to rely on allegations (1) that the BOP has failed to enforce GEO Group's contractual obligations, (2) that

_____

[2]Because plaintiff did not address these issues in his response, federal defendants do not further address plaintiff's ADA or damages claims in this Reply but continue to maintain that they should be dismissed as explained in their opening brief.

the BOP has generally approved GEO Group's system for providing health care, and (3) that the

BOP and GEO have a symbiotic relationship.  As explained below, plaintiff's vague contentions

on these points are based on misunderstandings of applicable law and are insufficient to state an

Eighth Amendment claim against federal defendants.

## ARGUMENT

I.   **PLAINTIFF FAILS TO STATE AN EIGHTH AMENDMENT CLAIM AGAINST FEDERAL DEFENDANTS**

   A.   **PLAINTIFF CANNOT STATE AN EIGHTH AMENDMENT CLAIM BY ALLEGING THAT THE BOP HAS FAILED TO ENFORCE GEO GROUP'S CONTRACTUAL OBLIGATIONS**

As explained in federal defendant's opening brief, the BOP is required under federal law

to enter into contractual relationships with private prisons to house a certain percentage of D.C.

felony offenders.  Fed. Defs.' Op. Br. at 4 (citing D.C. Code § 24-101).  The contract between the

BOP and GEO Group, through which D.C. felony offenders are housed at Rivers, sets forth

GEO's obligations in providing health services to inmates in accord with applicable law.  See id.

at 5.  In section I of his memorandum in opposition, plaintiff appears to rest his Eighth

Amendment claim against federal defendants on allegations that GEO Group has failed to

comply with the terms of this contract, that the BOP "is aware" that GEO Group is not in

compliance, and that the BOP has nevertheless failed to enforce the terms of the contract.  See

Pl.'s Opp. at 9 (alleging that federal defendants have shown "deliberate indifference to plaintiff's

medical condition because they are aware [that] defendant GEO's constitutionally deficient

'health care delivery' which is being provided to plaintiff does not comply with the terms of the

contract" between GEO and the BOP); id. at 13 ("one of the reasons why defendant GEO is not

in compliance with the contract, the constitution and the required 'health care delivery' that is 'commensurate to the level of care available in the community' is because the federal defendants have failed to enforce 'contract compliance' on defendant GEO").

Plaintiff's allegation that the BOP was "aware" that GEO was not in compliance with the BOP-GEO contract demonstrates his confusion of the standard that applies when assessing whether an individual committed an Eighth Amendment violation with that which applies when assessing whether a government entity can be held responsible for such a violation.  In effect, plaintiff erroneously attempts to apply to the BOP the subjective standard of "deliberate indifference" that the Supreme Court applied to federal prison officials sued in their individual capacities.  See Farmer v. Brennan, 511 U.S. 825, 837 (1994) (considering claims brought under Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971)).  The subjective standard for claims against individuals looks to the "state of mind" of the prison official, requiring that the official "know[] of and disregard[] an excessive risk to inmate health or safety."  Id.  This subjective standard does not apply when a plaintiff asserts an Eighth Amendment claim, not against an individual, but against a federal agency.[3]  As the Supreme Court in Farmer recognized, "considerable conceptual difficulty would attend any search for the subjective state of mind of a governmental entity, as distinct from that of a governmental official."  Id. at 841.

Federal defendants have explained in their opening brief that, under the framework set forth in Baker v. Dist. of Columbia, 326 F.3d 1302, 1306 (D.C. Cir. 2003), in order to state an

---

[3]The fact that the Complaint names Harley Lappin in his official capacity as BOP Director as a defendant does not change this analysis.  An official-capacity suit is, "in all respects other than name, to be treated as a suit against the [governmental] agency."  Kentucky v. Graham, 473 U.S. 159, 166 (1985).

-4-

Eighth Amendment claim against the BOP, plaintiff would have to, first, allege a predicate Eighth Amendment violation, and, second, identify a policy or custom of the BOP as the "moving force" behind that violation. Fed. Defs.' Op. Br. at 17. Because plaintiff's Complaint does not identify any BOP policy or custom as the moving force behind any alleged Eighth Amendment violation, he fails to state an Eighth Amendment claim against federal defendants.

With respect to plaintiff's allegation that the BOP has failed to enforce the requirements set forth in the BOP-GEO contract related to GEO's provision of medical care to Rivers inmates, plaintiff fails to make any specific factual allegations that would support this assertion. Moreover, a failure to enforce contractual terms – even if true – cannot itself qualify as a BOP policy or custom for purposes of the Eighth Amendment analysis. Essentially, plaintiff argues that because the BOP-GEO contract requires GEO to comply with the law, any failure of GEO to do so should be attributed to the BOP's failure to enforce the contract. Such a theory, if accepted, would result in an untenable reversal of the function of contracts as a means of delegating obligations to one party, placing the burden of complying with contractual obligations on the party that delegated an obligation rather than on the party that voluntarily agreed to perform the obligation.

In a similar situation, the Eleventh Circuit rejected the notion that a court could issue an order requiring the Department of Housing and Urban Development ("HUD") to enforce the requirement that it had imposed on a local housing authority by contract to "operate its projects in conformity with applicable federal statutes and regulations." Hill v. Ogburn, 812 F.2d 679, 680 n.2, 682 (11th Cir. 1987) ("The plaintiffs have made no showing that a coercive order against the federal defendants is necessary to remedy the utility overcharges that were made by

-5-

the local defendants, and they have made no showing that they were or will be harmed by the federal defendants' specific acts, or inaction.").  Similarly here, if the Court were to hold that an Eighth Amendment violation occurred, the appropriate injunctive relief would be available from GEO Group.  Any court order requiring the BOP to ensure that GEO Group do the same thing that the Court ordered GEO Group to do would be redundant and unnecessary.

Moreover, such an order would go far beyond the instruction that a federal agency obey the law, which the D.C. Circuit has disapproved as overbroad because it would subject the government to contempt proceedings for every new violation.  Cobell v. Norton, 392 F.3d 461, 475 (D.C. Cir. 2004).  If "a court cannot merely give [a] part[y] a broad order to obey the law," Karst Envtl. Educ. & Protection, Inc. v. EPA, 403 F. Supp. 2d 74, 82 (D.D.C. 2005) (citing NLRB v. Express Pub. Co., 312 U.S. 426, 435-36 (1941)), it surely follows that a court may not give a similarly broad order that one party ensure that another party obey the law simply because the two have a contractual relationship.  The fact that the BOP has attempted to ensure GEO Group's compliance with all legal obligations by inserting this requirement into the BOP-GEO contract should not subject the BOP to liability whenever GEO Group fails to so comply.

Plaintiff further asserts that D.C. Code § 24-101(b) imposes an obligation on the BOP "to step in and make defendant GEO comply with the terms of the contract."  Pl.'s Opp. at 10.  The cited provision states that those inmates housed, at the time of the provision's enactment, at the Lorton Correctional Complex are to be transferred to BOP custody by December 31, 2001, and that henceforth the BOP "shall be responsible for the custody, care, subsistence, education, treatment and training of such persons."  D.C. Code § 24-101(b).  While plaintiff has not asserted a claim under § 24-101(b), and that provision contains no private right of action that would allow

such a claim, plaintiff appears to argue that the provision prevents the BOP from delegating to GEO the responsibility for providing medical care to D.C. inmates housed at Rivers. That provision, however, must be read in conjunction with subsection (c) of § 24-101, which goes on to set forth the statutory requirement that a certain percentage of the individuals referenced in subsection (b) be housed at private contract facilities. Id. § 24-101(c). As a matter of practical and statutory necessity, the BOP simply cannot avoid delegating the activities that accompany operating a prison when it contracts with a private entity to operate that prison and house the inmates that reside there. Cf. Logue v. United States, 412 U.S. 521, 529 (1973) (recognizing that where a federal law "imposed [a similar] duty [to provide for inmates' care] on the [federal] Government" while "also authoriz[ing] the Government to contract with state and local authorities to provide safekeeping and care," the contract effected a "division of responsibility" that did not result in automatic liability of the federal government under the Federal Tort Claims Act ("FTCA") for tort claims against contract facility employees); Cannon v. United States, 645 F.2d 1128, 1139 (D.C. Cir. 1981) (similar).[4]

Contrary to plaintiff's implicit suggestion, the BOP is not attempting to abdicate its constitutional obligations in regard to the D.C. felony offenders that are statutorily required to be housed in private facilities. However, the existence of a contract delegating the provision of inmate medical care to a private prison necessarily changes the nature of the BOP's constitutional

---

[4]As federal defendants have explained, the BOP-GEO contract does not contemplate the kind of day-to-day monitoring of Rivers programs and activities that would conceivably result in BOP liability under the FTCA. Fed. Defs.' Op. Br. at 14-16. Moreover, Hines has not asserted an FTCA claim against the BOP. Because Hines' Eighth Amendment claim against federal defendants only implicates injunctive relief, the analysis set forth under Baker, 326 F.3d at 1306, requires him to identify a BOP policy or custom that, as the moving force behind the alleged Eighth Amendment violation, would, if enjoined, cure the violation.

duty.  As discussed, any Eighth Amendment claim against the BOP must be based on a custom or policy of the BOP that allegedly caused the alleged injury.  Where medical care is being provided, in the first instance, by employees or independent contractors of a private prison, it remains necessary for a claimant to point to a custom or policy of the BOP, rather than the contractor, that is allegedly deficient.  Here, plaintiff has not identified any such custom or policy.

> **B.**    **PLAINTIFF CANNOT STATE AN EIGHTH AMENDMENT CLAIM BY ALLEGING THAT THE BOP SANCTIONED GEO GROUP'S PROVISION OF HEALTH CARE WHERE NO SPECIFIC POLICY IS REFERENCED**

In section II of his brief, plaintiff does make vague references to "an officially adopted 'policy statement'" Pl.'s Opp. at 14, and to an alleged "policy for 'health care delivery'" that "was sanctioned" by the BOP and that is therefore, supposedly, "attributable to the federal government itself."  Pl.'s Opp. at 15.  Plaintiff here appears to maintain that the plurality opinion in City of St. Louis v. Praprotnik, 485 U.S. 112 (1988), provides a basis for holding the BOP Director responsible for "all 'health care delivery policies, services and operations'" at Rivers based on his "final policymaking authority."  Pl.'s Opp. at 15.   However, the Praprotnik opinion simply discussed the circumstances under which a government "policy" could be inferred from a single action or decision of a government official because the official has such a high position that his action or decision could be treated as somehow ratified or sanctioned by the government entity he represented.  City of St. Louis, 485 U.S. at 123 (plurality).  The key fact in that case was that the high-ranking government official was the one who had performed the act in question.

Here, there is no allegation that the BOP Director actually did anything in connection

with  plaintiff's medical treatment.  Though plaintiff alleges that the BOP "necessarily"

promulgates rules and policies, Pl.'s Opp. at 16, plaintiff has not identified any specific BOP

policy that allegedly operates to deprive Rivers inmates of adequate health care.  Similarly,

plaintiff alleges that GEO is required "to have written plans and procedures for medical, mental

health, and dental services, and to submit those plans to the BOP . . . for 'review and

concurrence,'" Pl.'s Opp. at 18, but plaintiff does not identify any of these written plans or

procedures as the cause of the allegedly inadequate care that he claims to have received.  The

allegation that written GEO policies may exist, and that the BOP may have reviewed and

approved them, is not sufficient to state a claim that a BOP policy or custom is responsible for

the Eighth Amendment violation that plaintiff here alleges.  See City of Oklahoma City v. Tuttle,

471 U.S. 808, 823 (1985) (emphasizing that the relevant "policy," for purposes of a municipal

liability analysis, must be something concrete that can itself be held unconstitutional and that

provides an "affirmative link" to the alleged constitutional violation).

### C.    THE BOP DOES NOT EXERCISE THE DEGREE OF CONTROL OVER GEO THAT WOULD BE NECESSARY UNDER ANY STANDARD TO ATTRIBUTE GEO GROUP'S ACTS TO THE BOP

As explained in federal defendants' opening brief, the contract between the BOP and

GEO Group does not contemplate the kind of close "supervision and control" that might, in some

circumstances, subject the BOP to liability under the Federal Tort Claims Act ("FTCA"), 28

U.S.C. § 1346, for negligent acts of GEO Group employees.  Fed. Defs.' Op. Br. at 14-16.

Although plaintiff has not asserted an FTCA claim, and such a claim could not succeed based on

alleged Eighth Amendment violations, FDIC v. Meyer, 510 U.S. 471, 478 (1994), federal

defendants discussed this issue in response to plaintiff's reference, in his Complaint, to the

BOP's supervision and control over GEO Group.  In section III of his brief, plaintiff appears to attempt to refute federal defendants' discussion on this point by alleging that the BOP and GEO Group have a "symbiotic relationship."  Pl.'s Opp. at 19.  For this notion, plaintiff relies on  the Supreme Court decision in <u>Burton v. Wilmington Parking Auth.</u>, 365 U.S. 715 (1961), which held that a private entity was engaged in state action, for purposes of bringing a § 1983 claim, when it leased space on the public agency's premises to operate a restaurant that served those who visited the building, which was otherwise devoted to public purposes.  <u>Id.</u> at 725.  Later Supreme Court decisions have recognized that <u>Burton</u> was an early case and that the state action standard has since been refined.  <u>E.g.</u>, <u>Am. Mfrs. Mut. Ins. Co. v. Sullivan</u>, 526 U.S. 40, 57 (1999).  More importantly, even if the state action doctrine applies to the assessment of whether GEO Group qualifies as a government actor, it has no bearing on whether the BOP can be held responsible for actions that may be attributable to GEO Group.  As discussed, the D.C. Circuit's controlling decision in <u>Baker</u>, 326 F.3d at 1306, which requires the identification of some BOP policy or custom as the cause of an alleged constitutional violation, governs that analysis.  Furthermore, the contractual provisions that plaintiff cites, which indicate that the BOP will subtract any amount of income that GEO Group receives as revenue generated from collect telephone calls from its monthly contract payments to GEO, and that GEO must maintain computer access to the BOP's computerized record system, simply do not provide substantiation of plaintiff's assertion that "federal defendants have insinuated themselves into the position of interdependence with defendant GEO" such that the BOP "must be recognized as a joint participant" in the operation of the Rivers facility.  <u>See</u> Pl.'s Opp. at 22.

## II.    IN THE ALTERNATIVE, TRANSFER TO THE EASTERN DISTRICT OF

-10-

**NORTH CAROLINA IS WARRANTED**

As explained in federal defendants' opening brief and in codefendant GEO Group's papers, if this case is not dismissed, the relevant factors warrant transfer to the Eastern District of North Carolina pursuant to 28 U.S.C. § 1404(a).  See Fed. Defs.' Op. Br. at 22-24.  Plaintiff's primary argument to the contrary is that the controlling law in the Fourth Circuit is allegedly less favorable to his position.  Pl.'s Opp. at 24.  However, even if this is true, a difference in how a particular Circuit interprets federal law has no bearing on the balancing of factors in a transfer analysis.  See Hartline v. Sheet Metal Workers' Nat'l Pension Fund, 201 F. Supp. 2d 1, 3 (D.D.C. 1999) (recognizing that "federal law . . . is uniform across the nation but is subject only to the differing interpretations of the nation's circuit courts").[5]  Rather, any such differences should ultimately be resolved by the Supreme Court.  See Clayton v. Warlick, 232 F.2d 699, 706 (4th Cir. 1956) (holding that conflicts of law between Circuits "present[] a matter for consideration by the Supreme Court on application for certiorari, not for consideration by a district judge on application for transfer under 28 U.S.C. § 1404(a)").  Plaintiff's further allegations that federal and state courts in the Eastern District of North Carolina are simply unwilling to hear claims brought by Rivers inmates, even when these claims are meritorious, and that, as a result, plaintiff would face imminent death if this action were transferred, are unsubstantiated and should not be credited.

Plaintiff also argues that this district should be more convenient for federal defendants

---

[5]Where state law claims are involved, the fact that one jurisdiction's law is more favorable than another's is also not relevant for purposes of whether transfer under § 1404(a) is appropriate; rather, such considerations only become relevant after transfer occurs, to determine what law the transferee court will apply.  See id. (citing Van Dusen v. Barrack, 376 U.S. 612 (1964)).

because the BOP Director and other BOP personnel will not have to travel as great a distance, and that GEO employees will not be inconvenienced because GEO has available two buses that transport inmates daily between Rivers and D.C. facilities. GEO Group has already disputed this argument, pointing out that the burdens associated with transporting inmates to another district are substantial. GEO Group's Reply, at 7 (dkt. # 16). Moreover, the fact remains that, as plaintiff concedes, the provision of allegedly inadequate medical care which is at the heart of plaintiff's claim occurred at Rivers, in the Eastern District of North Carolina. While plaintiff makes a vague reference to "acts and omissions that occurred in the District of Columbia," he does not specify what these acts and omissions are, nor are any such acts or omissions specified in his Complaint. The BOP-GEO contract, as well as any reports of the type that plaintiff references, are documents that speak for themselves, not "acts" that occurred in a particular location. While plaintiff remains an inmate at Rivers, his records are housed there as well. Rivers is likely to be the location of most records relevant to this case, despite plaintiff's unexplained assertion that his case would involve records housed at BOP and GEO headquarters and at various federal agencies in D.C. Transfer would therefore be in the interest of justice.

## CONCLUSION

For the foregoing reasons as well as those set forth in federal defendants' opening brief, the claims against federal defendants should be dismissed in their entirety. In the alternative, any surviving claims should be transferred to the Eastern District of North Carolina.

Dated: January 22, 2008                    Respectfully submitted,

                                           JEFFREY S. BUCHOLTZ

Acting Assistant Attorney General
JEFFREY A. TAYLOR
United States Attorney
VINCENT M. GARVEY
Deputy Branch Director

/s/ Kathryn L. Wyer
KATHRYN L. WYER
U.S. Department of Justice, Civil Division
20 Massachusetts Ave. NW, Room 7218
Washington, D.C.  20001
Telephone: (202) 616-8475 / Fax: (202) 616-8202
kathryn.wyer@usdoj.gov
*Attorneys for Federal Defendant*s

-13-

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on this 22nd day of January, 2008, a true and correct copy of the

foregoing FEDERAL DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO

DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER was filed electronically via CM/ECF

and a copy was served via U.S. First Class Mail, postage prepaid, on the following:

> Frederick Hines
> # 33592-007
> Rivers Correctional Institution
> 145 Parker's Fishery Road
> Winton NC 27986
> *Pro Se Plaintiff*

/s/ Kathryn L. Wyer
Kathryn L. Wyer
